**DOUGLASS et al. v. PAN–AMERICAN BUS LINES.**

No. 7889.

Circuit Court of Appeals, Fifth Circuit.

Dec. 27, 1935.

A. Y. Milam, Robt. R. Milam, and E. T. McIlvaine, all of Jacksonville, Fla., and Theo. T. Turnbull, of Tallahassee, Fla., for appellants.

C. L. Waller and Claude Pepper, both of Tallahassee, Fla., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants are members of the Railroad Commission of Florida and two motorbus lines operating in that state under permit from the commission. Appellee, plaintiff below, is an operator of an interstate motorbus line. The appeal is from an order granting appellee an interlocutory injunction restraining appellants from "arresting or causing the arrest of, or molesting or interfering with the plaintiff's motor bus operation between New York City and Miami, Florida, so long as the same is conducted purely as interstate commerce, and not in conflict with the provisions of the Federal Motor Carrier Act of 1935, Senate Bill No. 1629 (49 U.S.C.A. § 301 et seq.) nor in conflict with the tax laws of the state of Florida or the laws of the state of Florida with respect to the size, weight and equipment of the vehicles operated and the laws of the state of Florida regulating the manner of the operation of such vehicles over the Florida highways."

The injunction was granted August 26, 1935, on the sworn bill of complaint and nothing has been since done by appellants to bring the cause to trial on its merits. No answer has been filed, no testimony taken. The only facts we have are those the bill alleges. An appeal under such circumstances ordinarily brings up nothing for review but whether discretion has been abused. Butler v. D. A. Schulte, Inc. (C.C.A.) 67 F.(2d) 632, 635.

Appellants argue the case as though it were here on the merits. They insist that the court below determined that, and we must determine whether the enactment of the Federal Motor Carrier Act of 1935, Senate Bill No. 1629, 74th Congress, completely deprived the Florida commission of jurisdiction to regulate or control interstate traffic for the period named in the act pending the assertion by the Interstate Commerce Commission of active jurisdiction and control,[1] and freed all persons carrying or proposing to carry, interstate, from all regulation. They insist that this is not the effect of the act; that its purpose and effect is to continue the supervision of the state commission as before over all existing motor carrier service until the Interstate Commerce Commission should begin functioning and to prohibit all new operations,[2] except those duly certificated by state authority pending the time the Interstate Commerce Commission commences to actively function.

We cannot agree with appellant that these questions are before us for decision. All that we have here under the case as made on the temporary application is whether the court abused its discretion in restraining the defendants as it did. This is the case plaintiff's bill makes. Desiring to conduct a first-class interstate scenic tourist service from New York to Miami, Fla., and being particularly qualified to do so, it provided the proper equipment, obtained the necessary licenses and permits from all states north of Florida, to wit, New York, New Jersey, Maryland, District of Columbia, Virginia, North Carolina, South Carolina, and Georgia, and on June

---

[1] Though the act was approved and became a law on August 10, 1935, the sections in question here did not, by its terms, become effective until October 1, 1935. The act provided that the Interstate Commerce Commission might postpone the taking effect of any portion of the act until such time after October 1, 1935, as the commission might prescribe, not beyond April, 1936. The commission, by special order, made September 19, 1935, postponed the sections dealing with rates, fare, charges, traffic, etc., until December 1, 1935. By special order entered September 30, 1935, it postponed the effective date of sections 206, 207, 208, 209, and 211 until October 15, 1935. These sections dealt with the application for, the conditions and the granting of certificates of public convenience and necessity.

[2] Sec. 206, par. (a), after declaring that "no common carrier by motor vehicle subject to the provisions of the Act [this chapter] shall engage in any interstate or foreign operation on any public highway * * * unless there is in force with respect to such carrier a certificate of public convenience, and necessity issued by the Commission authorizing such operations," provided that the commission should issue such certificate to all carriers in bona fide operation on June 1, 1935, without further proof, if application is made to the commission within 120 days after the section took effect.

Paragraph (b), after providing for the method of applying for certificates, continued, "Any person, not included within the provisions of paragraph (a) of this section, who * * * is engaged" in interstate carriage "when this section takes effect may continue such operation for a period of one hundred and twenty days * * * without a certificate," and upon making application may continue such operation until otherwise ordered by the Commission. (49 U.S.C.A. § 306 (a, b).

23, 1935, applied to the commission, defendants, for a Florida interstate certificate. It filed this pursuant to and in strict accordance with the commission's rule 61 promulgated under authority of chapter 14764, Laws of Florida 1931, covering interstate motor vehicle operations. In said application and in support of it, it fully showed that the proposed service would not congest or injuriously affect the public highways of Florida, or the safety and convenience of the public traveling thereon, but would be of convenience and service to the state, its communities, and the public. After full hearing, the commission took the application under advisement and consideration. On August 10, finding that the service proposed was in fact a bona fide exclusive interstate operation but that the passage by Congress of Senate Bill No. 1629, Interstate Motor Carrier Act, had deprived the commission of jurisdiction to grant a certificate to an interstate carrier, it dismissed the application, "without prejudice to the applicant to operate over the highways within the state of Florida designated in such application when it shall have produced evidence before this commission of full compliance with the federal act above described, and shall have complied with the reasonable rules and regulations affecting the police powers of this commission insofar as they do not burden or obstruct interstate commerce."

Pursuant to that order, plaintiff filed with the commission, on the 10th of August, a showing that it had fully and completely met the requirements of the federal act, of the taxing laws of the state of Florida, the insurance requirements of the Railroad Commission, and all Florida police regulations affecting motorbusses. It advised the commission that it had obtained a for hire license required by Florida law, that it would keep its equipment fully up to the requirements of that law, and that it proposed to begin the operation in question immediately. Thereafter, plaintiff on the 10th of August did inaugurate its service, and said service has been maintained and will be maintained in all respects in accordance with the law. Notwithstanding all the foregoing, the commission, defendants, and the defendants Florida Motor Lines and Atlantic Greyhound Lines, as plaintiff's competitors, threaten to and will cause the continuous apprehension, and arrest of plaintiff's employees, thus preventing plaintiff's vehicles from being operated in the state of Florida, thereby impeding and interfering with its operations in interstate traffic. If these defendants do this, they will cause irreparable injury, both to plaintiff, in its service, and to the passengers it is carrying.

A reading of the court's order in the light of plaintiff's allegations makes it clear that the only thing the temporary injunction did was to prevent the arrest of plaintiff's drivers and the stoppage of its business, solely on the ground that it did not have a Florida certificate. The injunction expressly left it open to the defendants to proceed against and prevent plaintiff's operations for any violation of applicable provisions of the Federal Interstate Motor Act or the Florida laws. It in effect enjoined defendants from interference on the sole ground that plaintiff had no Florida certificate. Plaintiff in good faith applied for such certificate, meticulously and in every respect offering to comply, it did comply with the Florida law and regulations, governing the issuance of a Florida interstate certificate. On the showing it made it was in law entitled to such certificate. Indeed, it appears from the commission's findings that it would have been given one but for its view that the Federal Motor Carrier Act had, as to carriers interstate, taken its certificate jurisdiction away. At the time this attitude of inaction was taken, the Federal Motor Carrier Act had not taken effect. Neither the Interstate Commerce Commission, nor any person for it, nor any person for the United States, was complaining of or objecting to plaintiff's proposed operation. Had the commission taken a policy of action, instead of nonaction, upon the showing made, plaintiff would have had the certificate. Had the Interstate Commerce Commission been actively functioning, plaintiff, still on its showing, would have been entitled to a certificate there. Under these circumstances, the state commission refusing to exercise jurisdiction, the Interstate Commerce Commission not being in a position to do so, the act giving color, at least, to plaintiff's claim that he was entitled to operate, and above all, it being clear that no substantial legal injury could be done defendants by granting while plaintiff would greatly suffer from its refusal for the brief time a temporary injunction contemplates, it is quite clear that the granting of the injunction was not an abuse, but an exercise of, discretion. The order granting it should therefore be affirmed, unless, as appellee presses upon us, the matter it dealt with

was merely preserving status until the commission should begin functioning, and that matter is now moot. If that is a correct statement of the situation, the order should not be as appellee contends, one of dismissal as in Smyth v. Asphalt Belt Ry. Co. (C.C.A.) 12 F.(2d) 14; United States v. Hamburg-Amerikanische Packet-Fahrt-Action Gesellschaft, 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387; Bender v. Donoghue (C.C.A.) 70 F.(2d) 723, but one of reversal and remand, with directions to set aside and vacate the order granting the temporary injunction, retaining the cause for such action on the motion to dismiss or otherwise on the merits as the parties may be advised to take. Santa Anna Gas Co. v. Coleman Gas & Oil Co. (C.C.A.) 61 F. (2d) 975; Dakota Coal Co. v. Fraser (C. C.A.) 267 F. 130. For it is plain that even if the matter involved in the temporary injunction has become moot, that involved on the merits has not.

█ Appellee on this issue points to the fact that the law which was not by its terms in effect when the injunction was issued, has now, on submission to us, become fully effective and the time for filing applications with the Interstate Commerce Commission has fully ripened. It argues that conditions have changed so substantially since the temporary injunction was issued as to make the situation now entirely different from that on which its granting was based.

Appellants say that neither the matters involved in the temporary injunction nor those on the merits are moot. They say that the time has indeed come when appellee may apply for and obtain the certificate of convenience from the Interstate Commerce Commission the defendants have long insisted he must have. But it does not appear that plaintiff has gotten such certificate. That as long as he seeks to operate without having a certificate, the matter is not, it cannot be, moot.

█

These contentions and counter contentions emphasize the awkward situation in which appellants find themselves here. Appealing from a temporary order issued under the claim of an emergency, instead of pressing the cause to trial on its merits and bringing those up, they seek here, months afterwards, to review the discretion exhibited in issuing an order under conditions quite different from those which now obtain.

We cannot agree, though, with appellee that the matter involved in the injunction appealed from is moot, for it was not applied for to stay action until the going into effect of the Federal Motor Carrier Act, or until the Interstate Commerce Commission had begun to function. It was applied for, pending a hearing on the merits, to prevent, and it does prevent, interference with plaintiff solely on the ground that he has no Florida certificate. In their briefs appellants insist that this certificate is an essential to his right to operate. It nowhere appears that this contention has been abandoned. On the contrary, it appears that the intention to prevent operation because he has no certificate persists. The matter is not moot. Yarnell v. Hillsborough Packing Co. (C.C.A.) 70 F.(2d) 435.

█ Appellants make no point upon it, but appellees affirming that it is not, themselves raise and to an extent argue, whether this is a case for three judges. We agree with appellee that it is not. Plaintiff's bill does not attack as unconstitutional either a law of Florida or an order of the commission. It seeks no injunction upon that score. It is plain that the district judge had jurisdiction to act in it. Ex parte Hobbs, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353; Ex parte Buder, 271 U.S. 461, 466, 46 S.Ct. 557, 70 L.Ed. 1036; D. A. Beard Truck Line Co. v. Lon Smith (D.C.) 12 F.Supp. 964.

The order appealed from is affirmed.