**MANSFIELD HARDWOOD LUMBER COMPANY, Appellant,**

v.

**Hattie A. JOHNSON et al., Appellees.**

**No. 16344.**

United States Court of Appeals
Fifth Circuit.
March 1, 1957.

Sidney M. Cook, Charles D. Egan, Benjamin C. King, Frank M. Cook, Shreveport, La., for appellant.

John M. Madison, Vernon W. Woods, Shreveport, La., Ned A. Stewart, Texarkana, Ark., J. W. Patton, Jr., Lewisville, Ark., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Filed on the 21st day of June, 1956, by appellees as former stockholders of the defendant, a corporation in liquidation, the suit was for the rescission of the sales to it by them of their shares aggregating 1156, and for an accounting.

Put forward in a lengthy complaint, the claim in brief was: that the company, through its president and vice-president, had fraudulently conceived and as fraudulently executed a scheme by and through which it had induced plaintiffs to sell their stock in the company for $400 a share, an insignificant part of the $2000 a share which it

was alleged was its true value; that the corporation was in liquidation, had already distributed to the stockholders, as shown on its books, large amounts of cash and was about to distribute to them its remaining cash and to convey to them its title to undivided interest in reserved minerals; that, unless a preliminary injunction was issued to hold matters in status quo, the defendant would divest itself of all its assets and properties and would thereby defeat, or at least seriously embarrass and delay, satisfaction of plaintiffs' claims. The prayer was for an interlocutory injunction and on final hearing that the sales be rescinded and a full accounting be made to them as stockholders.

The defendant moved to dismiss the complaint for: failure to state a claim; failure to allege a prior tender; laches; and failure to join as indispensable parties the two officers referred to and the other stockholders. Subject to its motion, it filed a verified answer, denying all the allegations of fraud and overreaching, and alleging ratification of their sales by two of the plaintiffs and laches by all of them in not sooner bringing the action.

The district judge issued a temporary restraining order maintaining the status quo and renewed it from time to time until August 10, 1956, when, in a lengthy opinion, reported in 143 F. Supp. at page 826, he fully canvassed and decided adversely to it the grounds put forward in defendant's motion to dismiss. On the basis of this decision and the supplemental reasons later filed by him on September 17th, he issued the preliminary injunction [1] which is the subject of this appeal.

In complete disregard of the principle that the appeal from the interlocutory injunction did not bring up the cause as a whole and that "the case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered," Ex Parte National Enameling & Stamping Co., 201 U.S. 156, 26 S.Ct. 404, 406, 50 L.Ed. 707; Lea v. Vasco Pro., Inc., 5 Cir., 81 F.2d 1011; Douglass v. Pan-American Bus Lines, 5 Cir., 81 F.2d 222, 223; the defendant, instead of "pressing the cause to trial on its merits", and then bringing them up, Douglass v. Pan-American, supra, 81 F.2d at page 225, while he presents here the sole issue available to it on this appeal, that the interlocutory injunction was improvidently and inequitably granted, has come here with a seventy-five page brief, with nearly fifty pages of it devoted to a discussion of the court's ruling on the motion to dismiss, which is not before us for decision.

We recognize, of course, that "if insuperable objection to maintaining the bill clearly appears, it may be dismissed and the litigation terminated", Deckert v. Independent Corp., 311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189. Here, however, instead of determining whether

---

1. Reciting in it consideration of: the verified complaint and affidavits; the motion to dismiss; the verified answer and affidavits submitted by defendant; the defendant's motions for new trial or rehearing; the tax rulings of the Office of the Commissioner of Internal Revenue; the fact that the court was advised that a tax of approximately $1,500,000 would be incurred by the defendant if all of its assets were not irrevocably divested on or before Sept. 25, 1956; the necessity, therefore, of such irrevocable divestiture; and that this could be accomplished by either a voluntary act or an order of the court, appointing a trustee as stakeholder; the district judge ordered defendant to irrevocably transfer on or before September 24, 1956, all of its assets and properties in its possession to Commercial National Bank in Shreveport, as Trustee, and ordered the said trustee to receive title and possession thereof as stakeholder to hold until the litigation is completed and there is a final determination of the persons legally entitled to receive them. The trustee was required to pledge securities of the value of $1,500,000 and the issuance of the injunction was conditioned upon the complainants giving bond in the sum of $30,000.

the injunction was improvidently granted, the defendant is undertaking to have this court determine whether the order denying the motion to dismiss was rightly entered,[2] an entirely different thing which is not before us.

The district judge, reserving until the trial his final opinion on the merits,[3] in a thorough-going effort to deal adequately with the motion to dismiss for the purpose of determining in connection with the prayer for a preliminary injunction whether it contained allegations which, if proved, entitled plaintiffs to some equitable relief, made it quite clear in his opinion: that substantial questions of law and fact existed; and that, on a balancing of conveniences, the complainants would suffer irreparable loss if the injunction did not issue, while defendant, if it did, would not. We regard the principle declared in the Mytinger case, supra, 215 F.2d at page 383:

> "On appeal from decree from preliminary injunction sole issue before court *was whether district court abused discretion,* and merits of controversy would be left open for further consideration and future determination." (Emphasis supplied.)

as correct and controlling here, and agreeing with the district judge that the case should not have been dismissed for want of indispensable parties,[4] we will not therefore attempt to deal with or consider the first question presented in the briefs, whether the court erred in denying the motion to dismiss, but will direct our attention to and consider only the second question discussed, whether, as claimed by appellant, the district court, in granting the interlocutory decree, transcended its powers or abused its equitable discretion.

■ An examination of the record, in the light of the briefs and arguments of the parties, convinces us that the district judge did not exceed his powers in granting the injunction, and that he did not act other than, as a chancellor, he had a right to act—indeed ought to have acted. Though the district judge was troubled and did express grave concern over the form of the injunction, after full and careful consideration he concluded, and we agree, that, under the facts of this case, it was necessary, in order to preserve the equities and rights of the parties, for it to take the form it did.

In other circumstances than those prevailing here, it might well have seemed improvident, on a prayer for preliminary relief, to issue a manda-

2. Mytinger & Casselberry, Inc., v. Numanna, 7 Cir., 215 F.2d 382; Mitchell v. Penny Stores, 284 U.S. 576, 52 S.Ct. 27, 76 L.Ed. 500; Cone v. Rorick, 5 Cir., 112 F.2d 894; and cases cited in the notes of decisions to Sec. 1292, Title 28, "Scope of Review" notes 251 to 284.

3. "It also should be clearly understood that, in ruling upon the case in its present posture, we are not expressing a final opinion on the merits. Necessarily, we must rule definitely upon the points now before us, but we emphasize that our findings at this stage of the matter are subject to revision, if facts not now before us require a change in our views as here expressed.

"In our approach to this complicated matter, we have tried to maintain in proper balance, above the welter of facts, figures and prior decisions heaped upon us, the equities involved on both sides of the case. Inevitably, notwithstanding this plethora of legal and factual complexities, we find ourselves returning ultimately to the single, simple, inescapable fact: Plaintiffs received from defendant less than one-fifth of the actual value of their stock.

"Serious charges of deliberate fraud are made. Those charges are vehemently denied. Their resolution must await decision until all of the evidence is heard. Plaintiffs bear the heavy burden of proving actual fraud, not just by a preponderance of the evidence, but beyond a reasonable doubt. * * *" Johnson v. Mansfield Hardwood Lumber Co., 143 F. Supp. 826, at page 839.

4. Hudson v. Newell, 5 Cir., 172 F.2d 848, at page 850, Id., 5 Cir., 174 F.2d 546; Mackintosh v. Marks, 5 Cir., 225 F.2d 211. Cf. Christian v. Texas Gas Co., D.C., 14 F.R.D. 80, 81.

tory injunction, divesting the corporation of its remaining undistributed properties. We think it clear, however, for the reasons hereafter briefly stated, that, under the undisputed facts in this case, the injunction, though mandatory in form, did nothing more in fact and in law than, but exactly the same as, the restraining orders had done, preserve the status quo, and that, under the peculiar facts, its issuance was not beyond, but well within, the equity powers of the court.

When the suit was filed, the defendant, was in process of active liquidation under a plan to distribute all of its assets. It had already distributed much the greater part of them, and but for the Court's restraining order then issued and thereafter renewed, and the preliminary injunction here appealed from, it would have distributed them all. Appointing a custodial trustee and requiring the defendant, in compliance with the tax ruling obtained as a result of conferences between defendant's counsel, the court, and the tax officers, to convey to it its undistributed properties and thus complete its distribution in liquidation,—a liquidation which for tax purposes had to be complete by September 25, 1956,—the order appealed from not only secured the plaintiffs' position against loss pending the litigation of their claims, but also operated to save both plaintiffs and defendant from an enormous and wholly unnecessary tax loss, which might otherwise have occurred.

We are in no doubt that, matters standing thus, the district judge, in giving the injunction the form it took, of divesting the defendant of its remaining assets to vest them in a custodial trustee, did nothing more than the corporation was endeavoring to do, and, but for this suit would have done, bring about a complete liquidation of its assets in favor of its stockholders within the time required to obtain the tax saving. In short, in bringing this about, we are of the clear opinion: that the district judge did nothing more

than accomplish by mandatory divestiture what the defendant and all those interested in it wished accomplished; that there is no basis for a claim that injury was thereby inflicted on, or resulted to, the defendant or any of its stockholders; or that, in adapting the flexible remedial procedures of equity to the situation presented, the court transcended its powers.

In addition, it must be kept in mind that the district judge advised the parties that he was in a position to give them an immediate trial within two or three weeks, and if the defendant had not been so determined to make its appeal from an interlocutory order serve as a vehicle for appealing the order denying its motion to dismiss, the matters would have long since been settled on the merits in the district court and on their way to, if not decided by, this court. Compare what is said in Douglass v. Pan American Lines, supra.

These facts, together with the fact that the defendant's own bank, where its moneys were already deposited, was appointed as trustee, that the bank was required to give full security for the funds, that the funds in its control are drawing interest, make it clear, we think, that it cannot be reasonably contended that the order appealed from was improvidently granted.

In Pulitzer Publishing Co. v. Houston Printing Co., D.C., 4 F.2d 924, 927, the district judge, in denying an injunction where no injury was shown, said in part:

"Equity sits for substance, and not for shadow * * * and while, in the popular adage, straws may 'show the way the wind blows,' equity has never yet issued its writ to protect either a straw man or a house of straw, for equity saves the wheat and fans the straw."

Upon the same considerations, we think it plain that, upon the undisputed facts of record here shown, and upon the principle alone of the balancing of con-

veniences, for the district judge to have refused to frame his injunction in the mandatory form it took would have been a sticking in the bark of form, a denial of the substance for the shadow.

The order appealed from is therefore, affirmed.