## MANSFIELD HARDWOOD LUMBER COMPANY, Appellant,

v.

## Hattie A. JOHNSON et al., Appellee.

## No. 17299.

United States Court of Appeals
Fifth Circuit.

Feb. 20, 1959.

750

Benjamin C. King, Charles D. Egan, Sidney M. Cook, Frank M. Cook, Shreveport, La., for appellant.

John M. Madison, Vernon W. Woods, Shreveport, La., J. W. Patton, Jr., Lewisville, Ark., Ned A. Stewart, Texarkana, Ark., for appellee.

Before RIVES, TUTTLE, and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a final decree ordering a rescission of sales of corporate stock made in 1953, granting plaintiffs a pro rata portion of assets realized by a liquidation of defendant corporation, ordering an accounting by defendant, and making permanent a temporary injunction, already issued.

The opinion and order granting the temporary injunction were reported at D.C., 143 F.Supp. 826. This order was affirmed at 5 Cir., 242 F.2d 45. This case was reported on the merits at 159 F.Supp. 104 in a twenty-seven page opinion where District Judge Benjamin C. Dawkins, Jr., preludes:

"The crux of the case is that, had it not been for this suit, the majority—six people who proceeded to

sell and liquidate the corporate assets immediately after the minority stock was bought, notwithstanding promises that this would not be done —would have reaped a profit for themselves, before taxes, of more than $3,400,000, at the expense of the minority, and in addition to nearly $6,000,000 rightly to be received by them in the liquidation for their own stock.

"All persons involved are educated, cultured, refined. They have enjoyed, and still occupy, positions of prestige in their home communities. Until this tragic controversy arose, they appeared to be fairly congenial, at least on the surface.

"Now, regrettably, they are publicly and irreconcilably divided into two warring camps. One group— the former minority stockholders— is convinced that its members are victims of deliberate fraud perpetrated upon them by the majority. For their part, the majority resists and resents, with equal fervor, the charges made against them.

"While the suit is one which ought not to have been necessary, and clearly should have been settled, the depth of feeling is such that compromise has not even been discussed. Consequently, this litigation must run its bitter course, for better or for worse.

\* \* \* \* \* \*

"After a full trial on the merits, lasting more than a week; having heard all of the parties and their witnesses; having considered the lengthy briefs (totaling approximately 300 pages), and the authorities cited; having studied the transcript of testimony and exhibits (some 1255 pages); having heard the oral arguments of respective counsel, lasting nearly three hours; and having reached our findings of fact and conclusions of law, we now set them down for the record. They represent to us the only result which justly could come from the evidence before us.

"While there are some facts not in dispute, there are many more which are hotly controverted, especially as to what was said or not said, done or not done, known or not known, with regard to the purchase of plaintiffs' stock. In stating the facts we have found, our statements are based upon what we believe to be the truth, notwithstanding some testimony to the contrary. We also have drawn inferences, which we believe to be reasonable and correct, from the facts and circumstances in evidence." 159 F.Supp. at pages 106, 107–108.

This case concerns the purchase of minority shares from the plaintiffs as treasury stock by the defendant-corporation and a subsequent liquidation of the corporation, the transaction alleged (1) to have been fraudulent upon the interest of the plaintiffs, or (2) to have unjustly enriched the defendant, or (3) to have had no "serious" consideration under Art. 2464, L.S.A.–Civil Code.[1]

The gist of the complaint is in paragraph 28 thereof, which states:

"28. Plaintiffs aver that A. S. Johnson and Brown McCullough (acting in their capacities as President and Vice President, respectively, of Defendant, and who actually dominated the business policies of the Company and without securing the prior approval of the directors or stockholders of Defendant) conceived a fraudulent scheme acquiesced in by those stockholders whom they controlled and constituting a majority of the outstanding stock, whereby they conspired to cause Mansfield Hardwood Lumber Com-

---

[1]. "Art. 2464. The price of the sale \* \* \* ought not to be out of all proportion with the value of the thing; for instance the sale of a plantation for a dollar could not be considered as a fair sale; it would be considered as a donation disguised."

pany to buy as treasury stock all the stock of the remaining stockholders for an inadequate price and then to cause the company to sell its assets and distribute the proceeds upon liquidation at a tremendous profit to the conspiring group. The plan or artifice of the scheme was to cause Mansfield Hardwood Lumber Company to falsely notify the minority stockholders that dividend payments would be virtually discontinued for a period of the next 15 to 20 years, this to be the consequence of the company's entering upon a long range plan of extensive reforestation and improvement of its assets. The company was to negotiate for and purchase the stock at a price approximating its value as reflected by the books of the company, which value the conspirators knew to be grossly understated. The company was to falsely deny any intention of disposing of its assets and liquidating. Plaintiffs aver that the representations made to each of them in the purchase of their stock were in furtherance of this fraudulent scheme."

The intricate facts are set out fully in the opinion below at 159 F.Supp. 104, 106–117, and it would be redundant for us to reiterate them here. However, for the purpose of this opinion, we must attempt a brief summary.

The sole defendant is a corporation formed in 1901 by two men, the predecessors of the parties in interest here. The corporation engaged in the business of growing timber and sawmilling and by 1955 had acquired extensive holdings —some 93,000 acres of timberlands, two sawmills, several lumber companies, and a small railroad. Out of the 4,836 shares of stock outstanding in 1953 (par value of $100 per share), the defendant's three officers and their immediate families owned some 2,751 shares. These three officers—A. S. (Bud) Johnson, Brown McCullough, and T. W. M. Long—and their families will be referred to as the majority stockholders. The remaining shares were spread out among the plaintiffs and others, the two largest holders being plaintiffs, Mrs. Hattie A. Johnson and Mrs. Jeanette Johnson Jennette. The corporation began purchasing the minority shares in the Spring of 1953 for $350 per share and made its last purchase from Mrs. Johnson and Mrs. Jennette in the Fall of 1953 for $400 per share. The defendant purchased a total of 1,567 shares. There was some evidence that the fair market value of the stock, considering all elements, was about $320 per share.

As early as 1952, the officers of the corporation considered the possibility of liquidating the corporation but testified that this possibility was dismissed because of the large tax consequences. In the Spring of 1954, some negotiations for a liquidation sale were resumed in earnest; and, after receiving word that Sections 331(a)(1) and 337(a) of the 1954 Internal Revenue Code, 26 U.S.C.A. §§ 331(a) (1), 337(a) would become effective on August 16, 1954, which would abolish the double capital gains tax in liquidation, that is on both the corporation and the stockholders, the officers actively solicited a sale to several purchasers. In July 1955, Robert Gair Company, Inc. had agreed to purchase all the assets of defendant, excepting certain mineral rights, for $9,531,630.34. This agreement was approved by defendant's remaining stockholders on September 26, 1955, and the sale to Gair was consummated on May 25, 1956.

As the district court found, had the plaintiffs and other minority sellers not sold their stock, it would have been worth about $2,068 per share on liquidation or over five times the amount received. The majority stockholders thus profited by some $3,458,007 from the treasury purchases.

There are two outstanding facets in this case: (1) the shortness of the time interval between the purchase of the minority shares as treasury stock and the subsequent liquidation of the corporation, and (2) the great difference between the amount paid per share for the

repurchased stock ($350 to $400) and its worth on liquidation ($2,068).

Thirty-four specifications of error are assigned by appellant. Some merit consideration and some are purely frivolous. In discussing only those which we think dispositive of the case, we again refer for a more complete statement of the facts to the opinion below.

■ Great emphasis is placed on the failure to join as indispensable parties the officers as wrongdoers, the liquidators, the stockholders after adoption of liquidation, the court trustee (a local bank) holding the remaining liquidated assets not yet disbursed, and the stockholders as owners of the assets held by the trustee. To join any of these would, of course, defeat diversity jurisdiction. On the prior appeal, from the granting of the temporary injunction, Chief Judge Hutcheson stated for this Court at 242 F.2d 45, 47:

> " \* \* \* and agreeing with the district judge that the case should not have been dismissed for want of indispensable parties,[4] \* \* \*.
>
> "4. Hudson v. Newell, 5 Cir., 172 F.2d 848, at page 850, Id., 5 Cir., 174 F.2d 546; Mackintosh v. Marks, 5 Cir., 225 F.2d 211. Cf. Christian v. Texas Gas Co., D.C., 14 F.R.D. 80, 81."

Without deciding whether this prior adjudication of jurisdiction is the law of the case,[2] we note that, under the circumstances of this case, if the plaintiffs have stated a claim against the defendant corporation upon which relief can be granted, the failure to join the corporate officers and others as party-defendants is not fatal, for

> "The power of a court of equity so to mold its decree as to do complete justice between the parties without

adversely affecting those not before the court is exceedingly broad and elastic." Mackintosh v. Mark's Estate, 5 Cir., 1955, 225 F.2d 211, 215.

■ This brings us to consider whether defendant's motion to dismiss should have been granted for failure to state a claim, which also raises substantially the same question presented in its argument concerning the joinder of defendant's officers as indispensable parties. In defendant's brief, it summarizes:

> "In summary, it is submitted that the Court below erred in failing to dismiss this action because the complaint fails to state a claim upon which relief can be granted in three important respects: (1) the complaint affirmatively alleged that the sale of plaintiffs' stock was induced by the alleged fraud of defendant's officers who are alleged to have acted without authority and for their own benefit; (2) the complaint fails to state the value of the stock in its then condition, at the time of the sale; and (3) the alleged representations by the officers with reference to future dividends and future liquidation of the corporation were mere indefinite expressions of opinion, relating solely to future prospects of the Corporation, and could not, if made, constitute grounds for an action for rescission for fraud."

We feel it unnecessary to dwell upon these contentions because, after carefully studying all of the evidence in this cause, we are of the opinion that the district court was clearly erroneous in finding that fraud per se of defendant through its officers was established beyond a reasonable doubt[3] to the extent of "grasping greed" and "moral bankruptcy." We so hold because of our

---

**2.** See, Richardson v. Ainsa, 218 U.S. 289, 31 S.Ct. 23, 54 L.Ed. 1044; Federal Reserve Bank of Kansas City, Mo. v. Omaha National Bank, 8 Cir., 1930, 45 F. 2d 511, 514; cf. Lowry v. International Brotherhood, etc., 5 Cir., 1958, 259 F.2d 568, 575.

**3.** Belcher v. Booth, 1927, 164 La. 514, 114 So. 116; American Guaranty Co. v. Sunset Realty & Planting Co., 1944, 208 La. 772, 23 So.2d 409, 430.

doubt that the "intent" element necessary as the basis for actual fraud was adequately established. In other words, we doubt that defendant's officers during the stock purchases from plaintiffs had the necessary *mens rea* for a predication of actionable fraud.

██ However, the results were correct and are soundly predicated, we think, upon the liability for breach of the fiduciary duty owed by a corporation's officers to its individual stockholders. Practically all jurisdictions recognize a fiduciary relationship arising from the directors and officers to their corporation and to the stockholders as a whole, while a "growing minority" accord this duty to individual stockholders,[4] especially concerning the purchase of stock from a shareholder.[5] Whether this relationship between officers and directors and their stockholders is termed fiduciary or quasi-fiduciary or trust or confidence is immaterial, and, likewise, is it immaterial whether its breach is described as constructive fraud, unjust enrichment, fraudulent breach of trust, breach of fiduciary obligation, gross negligence, or otherwise, and whether the remedy is given by a constructive trust, restitution, or accounting. These are all relative terms describing broad equitable concepts. The standard of a fiduciary's duty to his beneficiary, depending upon the instant relation and the facts of the particular case, lies somewhere between simple negligence and willful misconduct or fraud with the intent to deceive. The actual intent to deceive is not required where one party is so placed in such an advantageous position to the other. Actual fraud will afford redress in the absence of the special relationship.

██ Louisiana has long recognized the fiduciary duty owed by corporate directors and officers to their individual stockholders. Her courts have applied it over and over, applying, it seems, the

4. See Fletcher, Cyclopedia Corporations, perm.ed., § 848:

"Sometimes it is said that a director or other managing officer is a trustee in so far as the corporation and its stockholders are concerned, and sometimes it is said that he is a trustee only as to the corporation itself. However, the better rule, although not sustained by the weight of authority seems to be that he is a trustee for an individual stockholder, as well as the corporation, at least in a limited sense."

5. "There is a sharp conflict in the authorities over the question as to whether the relations between a director or officer of a corporation, on the one hand, and shareholders on the other, are not of such a fiduciary nature as to make it the duty of the former to disclose the knowledge which he possesses affecting the value of the stock before purchasing the same from a shareholder. To go further back, it would seem that the dividing line is whether directors are to be deemed trustees for individual stockholders so far as their stock in the corporation is concerned." Fletcher, Cyclopedia Corporations, perm.ed., § 1168.

"The older or so-called majority rule laid down by one class of decisions is that 'while directors occupy a trust relation to the corporation which they direct, their duty does not apply to the stockholder in the sale and purchase of stock. Dealing in its own stock is not a corporate function. In buying or selling stock, directors may trade like an outsider, provided they do not affirmatively act or speak wrongfully, or intentionally conceal facts with reference to it. There is also the qualification that no other relation of trust exists between the parties.' The numerical majority of the decided decisions have adopted the rule that courts do not impose upon officers and directors of a corporation any fiduciary duty to its stockholders which precludes them, merely because they are officers and directors, from buying and selling the corporation's stock." Id. § 1168.1.

"Under the minority rule directors are considered trustees for individual stockholders with respect to their stock, and this rule goes to the extreme of holding that they cannot purchase stock from a stockholder without giving him the benefit of any official knowledge they possess which may increase the value of the stock. [Citing Markey v. Hibernia Homestead Ass'n (La.App.), 186 So. 757]. This view has been adopted by a substantial number of cases and has been approved by practically every legal writer in this field." Id. § 1168.2.

See also, 19 C.J.S. Corporations § 793 (b).

same standard of care to stockholders as owed by officers and directors to the corporation under LSA–Revised Statutes 12:36:

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

For brevity, these decisions are discussed in the margin.[6] We feel that these decisions fully answer appellant's conten-

6. See the case of Markey v. Hibernia Homestead Ass'n, La.App.1939, 186 So. 757, 763, quoted at length in footnote 7 of the lower court's first opinion, D. C., 143 F.Supp. 826, 839, 840; and Commercial Nat. Bank in Shreveport v. Parsons, 5 Cir., 1944, 144 F.2d 231, 238–239, quoted in the lower court's opinion on the merits at 159 F.Supp. at page 119.

In Dawkins v. Mitchell, 1922, 149 La. 1038, 90 So. 396, 398–399, the Supreme Court of Louisiana stated:

"The directors of the bank were its agents, charged under the law with an implied trust to use its funds only for the purposes permitted by law, and to preserve them for its creditors and stockholders * * *. The obligation which the directors incurred in favor of the bank was a special one, due to it in particular, and to the stockholders. It was not a general duty due to every one. They were elected by the stockholders to administer the affairs of the bank and accepted the trust.

    \*    \*    \*    \*    \*

" * * * still we should feel constrained to hold that a fiduciary relation existed between a shareholder of the bank and the members of the board of directors, and that the duty which was due the shareholders was a special duty, and not a general one due everybody. The breach of that duty would be a breach of trust; and therefore damages arising therefrom would be governed, not by the prescription of one year, but by that of 10 years. The shareholders elected the members of the board to administer the affairs of the bank, and the shareholders had a beneficiary interest in the bank. From this interest and from the acceptance of the trust by the directors there arose the special duty, due by the latter to the former, to faithfully administer that interest."

In Pool v. Pool, 1943, La.App., 16 So.2d 132, 135, the court stated:

"Directors are not liable for mere errors of judgment on their part where they act in good faith. They are only required to exercise reasonable care and diligence and act in good faith. But they are liable for wilful neglect of duty, gross negligence or their fraudulent breach of trust. 19 C.J.S. Corporations § 764, p. 112 et seq.; 13 Am.Jur., Corporations, Section 992, p. 945 et seq.

    \*    \*    \*    \*    \*

"If the petition is amended to set out the facts mentioned above, the plea of one-year prescription would not be good, for the reason that the relation between the defendants as directors and plaintiff as a stockholder was a fiduciary relationship and their duty to him was a special duty and not one which they owed to the general public. The prescription of ten years and not that of one year would apply. Dawkins v. Mitchell, 149 La. 1038, 90 So. 396."

In Williams v. Fredericks, 1937, 187 La. 987, 175 So. 642, 644–645, the court reiterated:

"The directors of a corporation occupy a fiduciary relation to the stockholders generally, not only to the stockholders who elect them, but to all of the stockholders; and this fiduciary relation to the stockholders forbids a director to bind himself to use his official authority or prerogative for the personal benefit of any one. The leading case on the subject is West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254, where the doctrine is stated thus: * * *."

In Carey v. Dalgarn Const. Co., 1930, 171 La. 246, 130 So. 344, 347, this principle was further expanded:

"This court has said on numerous occasions, and particularly in McCloskey v. New Orleans Brewing Co., 128 La. 197, 54 So. 738, that courts will not interfere with the acts of a corporation in the absence of a clear showing of fraud or breach of trust.

"In Marcuse v. Gullett Gin Co., 52 La. Ann. 1383, 27 So. 846, the court said:

" 'There is no necessity for the appointment of a special receiver to institute actions to recover from the officers and directors of a corporation, who hold a majority of its stock, property of the corporation, which a stockholder charges them with having illegally diverted and appropriated to themselves as salaries.

" 'The individual shareholder may himself bring such actions, by making the corporation, and the directors against whom relief is sought parties.' "

tions that Louisiana's limited equity jurisprudence will prevent our imposition of a "constructive trust" or "equitable lien" or "right of restitution" for the breach of the fiduciary duty owed to the plaintiffs by defendant's officers.

We agree with the district court that the fiduciary relationship in this case necessitated a disclosure of the following facts admittedly not disclosed by defendant's officers to the plaintiffs:

"1) The $5,000,000 offer, for 55% of defendant's timberlands, made by R. O. Martin to Bud Johnson in 1952;

"2) The instructions given to C. L. Brooke, in 1952, to assume that defendant's assets possessed a value in excess of $9,000,000;

"3) The opinion of W. C. Postle, defendant's Chief Forester, in 1953, that its timberlands then had a market value 'in the neighborhood of a hundred dollars an acre', which the officers knew about;

"4) The letters containing tax advice, written by Brooke on August 29 and October 14, 1952, wherein contemplated plans for sale of defendant's assets, liquidation, merger, stock sales, etc., were discussed;

"5) The officers' secret consideration of various plans of liquidation, reorganization, merger, etc., before the stock-buying program was begun."

Johnson v. Mansfield Hardwood Lumber Co., D.C.W.D.La.1958, 159 F.Supp. 104, 118, note 9. Furthermore, the special relationship between defendant's officers and the plaintiffs demanded that restitution be made to plaintiffs for the difference of price in their sold shares and their value upon the almost immediate liquidation—especially where the defendant's officers made promises concerning curtailment of future dividends and disclosed plans for no liquidation in the near future and used economic coercion to secure the sale of the minority shares.

As the district court found, defendant's officers were the corporation.

Other than their official nature, they were directors and also had in their control over one-half of the voting stock. They knew the intricate workings of the corporation, its total assets, and they knew more than the other stockholders about the value of the stock both for sale and upon liquidation. They used promises and representations as to their intended future running of the corporation which exerted economic influence on the plaintiffs, forcing them to sell, and then immediately began plans to liquidate in contradiction of their representations. Certainly, their fiduciary duty was violated to the plaintiffs-stockholders.

The district court answered appellant's contention that the officers rather than it or in conjunction with it were the proper parties defendant, as raised in its motion to dismiss, by quoting part of the following from Kohler v. Jacobs, 5 Cir., 1943, 138 F.2d 440, 442–443, which, in our opinion, is good law:

"* * * As to the Corporation, it is true that it owes the stockholder no duty of disclosure when he trades with others in its stock, and since he has access to the corporate books diligence might well lead him to them when he desires information from the Corporation. But if a corporation (which ordinarily does not deal in its own stock) for its own lawful purposes sets out to buy shares through its managing officers, and they by intentional misrepresentation and concealment deceive a selling stockholder who is ignorant of the truth, though he be an inactive director who ought to know, so that he is damaged, we see no reason why the corporation is not bound for the consequences. The deceit practiced by the corporation's high officers in the corporation's business and for its benefit must be taken to be a corporate act, and not ultra vires. 19 C.J.S., Corporations, § 1278(a)(b); 13 Am.Jur., Corporations, § 1125. If on trial it should appear that the transaction

was a deceit committed by Jacobs for the benefit of the Corporation, both the Corporation and himself as an individual might be liable; because the action is not one to rescind a fraudulent transaction, or to recover an unjust enrichment, but for the damages done by a wilful tort for which a perpetrator may be held liable though he realized no benefit from it. United States v. City of Brookhaven, 5 Cir., 134 F.2d 442. * * *"

Actually, however, the acts of defendant's officers in inducing the plaintiffs to sell were in all respects within their authority and not ultra vires—both Louisiana,[7] where the acts occurred, and Delaware,[8] where defendant is incorporated, allow a corporation to purchase its own stock after meeting certain requirements (apparently satisfied here), and such acts were well within the implied, if not the express, authority of the officers' agency. Further, as covered by the trial court, there is no doubt about ratification by the corporation, if necessary at all, for breach of confidence. In fact, here, the corporation was the proper party defendant for satisfying all claims of all plaintiffs in one lawsuit. A stockholder derivative action certainly is not proper for, here, the wrong is to the individual plaintiffs and not to the corporation.[9] And the general rule that "a corporation is not relieved from liability for the fraudulent acts of its officer within the apparent scope of his authority, by the fact that the officer in committing the fraud is acting for his own benefit, and

the corporation does not profit from it,"[10] applies as strongly where a fiduciary breach is substituted for fraud.

■ Appellant earnestly predicates separate defenses to the claims of four plaintiffs, Max Brown, Mrs. Hattie A. Johnson, Mrs. Jeanette Johnson Jennette, and Ben Drew Velvin, Executor, who collectively assert more than eighty-four per cent in value of the claims. As to these first three plaintiffs, discussed by the lower court at 159 F.Supp. at pages 127–131, we must summarily hold that the facts conclusively warrant an affirmance on the basis of the breach of fiduciary relationship existing to them from the corporate officers and especially on the "business duress" practiced on Brown. Their special defenses are of no avail. To further elucidate would be repetitious. Ben Drew Velvin, as executor and sole heir of his mother, a party plaintiff having died during this litigation, may pursue the claim which she had asserted. We do not feel that his opinion testimony that there was no fraud would prevent him from pursuing his claim as executor.

■ We do hold that the trial court was clearly erroneous in its findings as to the Shreveport Lumber Sales, in commenting on the excessiveness of the officers' salaries and expense accounts, and in holding "that the officers probably bought a large amount of timber from outside sources, instead of cutting from defendant's timberlands, thus maintaining their value for purposes of later liquidation," all found at 159 F.Supp. at

---

7. Louisiana allows the purchase of treasury stock [State v. Stewart Bros. Cotton Co., 1939. 193 La. 16, 190 So. 317, 321–322], as Section 23, paragraph A of Act 250 of 1928 permits:

"A. Unless the articles otherwise provide, a corporation may purchase its own shares of any class issued by it, but only out of surplus available for dividends, and only if the purchase does not violate the contractual right of any other class of shares * * *." LSA–R.S. 12:23, subd. A.

8. Ashman v. Miller, 6 Cir., 1939, 101 F. 2d 85, 90:

"Section 19 of the General Corporation Act of Delaware (Rev.Code 1935, § 2051 [8 Del.C. § 160]) expressly confers on a corporation the power to purchase its own stock provided it can do so without impairing its capital."

See also, Bankers Securities Corp. v. Kresge Department Stores, D.C.D.Del. 1944, 54 F.Supp. 378.

9. See Fletcher, Cyclopedia Corporations, Perm.ed., § 5911.

10. Annotation, 43 A.L.R. 615.

page 111. In fairness to defendant's officers, we record our opinion that such findings are clearly erroneous, notwithstanding that our so holding does not change the result.

The judgment is

Affirmed.