**GENERAL GAS CORPORATION,**
Appellant,

v.

**NATIONAL UTILITIES OF GAINESVILLE, INC., Appellee.**

No. 18002.

United States Court of Appeals
Fifth Circuit.

Nov. 16, 1959.

Cubbege Snow, Macon, Ga., Robert B. Thompson, Gainesville, Ga., for appellant.

John N. Crudup, Gainesville, Ga., for appellee.

Before HUTCHESON, TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from the grant by the trial court of a preliminary injunction which, in effect, required the appellant to abandon a deep price cut in the sale of its products and to restore a general price which the court found to have been previously prevailing.

Although we do not on this appeal undertake to resolve the legal questions that must ultimately be disposed of if the plaintiff below is to be entitled to recover under Section 2 of the Sherman Act as amended, 15 U.S.C.A. § 2, or under the provisions of the Robinson-Patman Act,[1] it is necessary to consider the appellee's theory of recovery in order to test the appellant's contention that no prima facie case was made out to warrant the issuing of a temporary injunction.

The gist of National's action is that it, as a local company, is engaged in the business of selling liquefied petroleum gas in competition with General in all or parts of thirteen counties in Georgia; that prior to June, 1959, there was an established prevailing price for the sale of such gas of 20¢ less 2¢ a gallon discount for cash or prompt payment to domestic customers and 18¢ less two cents to commercial customers; that during the month of June, General cut the prices to 15.5¢ less two cents to all customers; that such cut was nc' made in other trade areas in Georgia, but that it was made in National's trade area for the

1. The significant limitations on the availability to private litigants of Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a seems not to have been considered by the trial court in its order, which it based on specific acts proscribed (under some circumstances) by the Robinson-Patman Act.

purpose and with the intent to injure, destroy or prevent competition by National; that the introduction of such price, alleged to be so low as to make it impossible for either competitor to make a profit, has the effect to, and tends to, substantially lessen competition and create a monopoly.

The hearing on motion for preliminary injunction was on affidavit only. No oral testimony was heard by the trial court. The court made findings of fact to the effect that since 1954 there was a prevailing price of 20¢ less two cents for 10 days payment, and 18¢ less two cents for domestic and commercial customers, respectively, in the trade area; that the plaintiff provided certain free service to customers that was worth one cent a gallon on the price of gas; General did not provide such free service; that there were some twelve other competitors of the two parties; that National's sales had increased during the years immediately preceding the filing of this action and that such sales were at the average price of 18.17¢ per gallon; that National had approximately 1500 customers and 20 percent of the business, and General had an estimated 1800 customers and approximately 25 percent of the business. It was proved that General's sales had declined during the months immediately preceding the filing of the new prices by it. The court found that prior to the month of June, 1959, "there has been, both on the part of the plaintiff and defendant, price cutting in vying for the business of individual customers, but there had not been until the action of the defendant here complained of, an overall price reduction to all customers within the competitive area; that General continued to sell the gas in adjacent areas at 18¢ net and that if National reduced its price to 13.5¢ a gallon net to meet the net price of appellant it could not operate at a profit but would be losing money."

Although recognizing the undoubted correctness of the principle that price cutting for the purpose of getting a competitor's business is not per se illegal, Schine Chain Theatres v. United States, 334 U.S. 110, 120, 68 S.Ct. 947, 92 L.Ed. 1245, the court seems to have decided that such act here "tends to eliminate plaintiff as a competitor" and it was therefore illegal. The court entered an order enjoining the appellant from continuing in effect the price cuts of June, 1959, and from "maintaining a general sales price in said counties * * * of less than 18¢ [net] per gallon" for domestic consumption or less than 16¢ net for commercial consumption. It provided that it should have no "effect on customer sales that have been negotiated in the past, as a business practice, on a bid basis or a customer basis, nor shall it prevent such competition in the future." The court required the appellee to make a bond for $5,000 for the protection of the appellant. The injunction was to be in effect until the further order of the court. The case is expected to be ready for trial on the merits in April, 1960. Both parties agree that the intervening months are the months of largest sales in this seasonal business.

Appellant first filed a petition with this court seeking an order staying the injunction, but, without passing on that petition, we set the appeal down for an early hearing on the merits. Appellant urges that there was a complete failure of proof of such purpose, intent, or tendency to monopolize as is contemplated in the applicable statutes. Moreover, it contends there is a complete absence of proof of threat of irreparable loss to the plaintiff if the injunction had been denied.

We recognize the salutary principle that where the facts are sharply in dispute on preliminary hearing, the trial court should go extremely slow in entering an order that, by its very nature, may seriously interfere with the course of competition. This is particularly so when all the proof, pro and con, is by affidavit and the trial court is unable to sift out, either by hearing the witnesses testify or by the parties' cross-examination, what is true and what is false. General Electric Co. v. American Whole-

sale Co., 7 Cir., 235 F.2d 606. Moreover, the record here contains several weaknesses of proof as to points which were essential to the establishment by plaintiff of its prima facie case.

### I. The Previous Non-Contested Prevailing Prices.

The court found that the previous price prevailing in the retail trade area was 20¢ less two cents, and 18¢ less two cents. The affirmative proof offered by plaintiff included an affidavit by one competitor which stated that the entire trade area in which it, the Ritchie Gas Company, Inc., operated, five counties, the prevailing price was 17¢ net. Another affidavit introduced by plaintiff showed that gas was sold at a regular 17¢ price in Forsyth County during 1957, 1958, by another competitor, L. & L. Gas Company, and that a reduction to 15¢ had been put into effect during the summer months of the year preceding the June reductions of defendant here complained of. One affidavit shows that another competitor, Southland Butane, Inc., sold at the regular price of 17¢ net during 1957–1958 in four of the counties in the trade area. Another affidavit offered by the plaintiff averred that the regular price of Woodstock Gas & Coal Company in Forsyth County was 17¢ less one cent if paid in 30 days, or 16¢ net. It is not stated that appellant was in any way responsible for this price. E. S. Gilmer, president of Tugalo Gas Company, which competed in three counties with both National and General, said "the prevailing price for L.P. gas in our trade area has been 17¢ net to any consumer. The price has prevailed for the last three years." There was evidence introduced by appellant, which is not denied by appellee, that the price set by it in June, 1959, was not lower than prices offered by at least one of its competitors when the one cent differential for free service was considered. Looking only at the plaintiff's proof as to the existence of a prevailing non-con-

troversial price prior to the June reduction, and the court's finding of the existence of a one cent price differential between plaintiff and defendant, it is clear that the finding that "Since 1954 the price of liquified petroleum gas in the area served by National has been 20¢ per gallon with a two cent per gallon discount if paid within 10 days from delivery, leaving a net price of 18¢ per gallon for domestic consumers" is without factual basis to support it. So long as there were competitors in the field offering a net price of 17¢ [2] which the Ritchie and other affidavits offered by the plaintiff averred, it cannot be said that, within the context here intended, the price was 20¢ less two cents. Moreover, in making such finding the court did not give effect to its other finding that, as applied to the dispute between the two parties of this litigation the price offered by National included services worth one cent per gallon.

On the record before us it clearly was not permissible for the court to require that the defendant reinstate a price of 20¢ less two cents for cash or prompt payment.

### II. Irreparable Damage.

The appellee's proof of irreparable damage was in the nature of proof of its current profits at the current yield of 18.44 cents on the average for 1958 sales. It proved a net profit of $19,741.10 before taxes, and showed that a cut of each cent in the amount received for the same number of gallons would result in annual profit reduction of $13,248. There was proof by affidavits of the officers of the plaintiff that National Utilities of Gainesville is unable to compete with General Gas Corporation at a retail market of 13½¢ per gallon and 13¢ per gallon; "our break even point is about 16¢ per gallon net, General Gas Corporation's price discrimination by cutting liquified petroleum gas to 15¢ per gallon, 14¢ per gallon, 13½¢ per gallon and 13¢ per gal-

---

2. Analysis of the plaintiff's affidavits shows that in nine out of the thirteen counties a regular price of 17¢ net was being maintained by at least one dealer a substantial part of the time after 1954.

lon [the cut complained of was to 15½¢ less 2 cents for 10 days payment] will completely eliminate us as a competitor \* \* \* " Proof by a certified public accountant stated: "A reduction in the price of L.P. gas *to 123½¢ per gallon* would result in our immediate irreparable loss to National Utilities of Gainesville, Inc. and would force the corporation out of business." (Emphasis added.)

However, and most significantly, it must be noted that National Utilities offered proof by its other competitors, who asserted that they could compete on the basis of a price of 15¢. Gene Latham, president of L. & L. Gas Company, operating in five counties, including one in this trade area, furnished an affidavit for the plaintiff below in which he said, "L. & L. Gas Company cannot operate its business at a price less than approximately 15¢ per gallon \* \* \* " D. J. Whitmire, treasurer of Southland Butane, Inc., a competitor in 4 counties, said: "Southland Butane, Inc. cannot operate its business at a price less than approximately 15¢ per gallon \* \* \* " J. Hoyt Crow, vice-president and general manager of Woodstock Gas & Coal Company, which competes with both the parties to this litigation in Forsyth County, said: "My company cannot compete with General Gas Corporation at such cut prices [allegedly 13¢]. We cannot make money and stay in business at less than 15¢ per gallon."

To look briefly at the other side, we find proof offered by General [3] that it can and did, during the months of June and July make a profit from the sales at 17¢ less two cents and 15½¢ less two cents; that "not more than forty percent of the customers will avail themselves of the two cents discount for payment within ten days"; that specifically, during the month of July, 1959, when appellant had in effect a price of fifteen and one-half cents, less two cents, its sales price averaged 14.79¢ per gallon. This estimate of

the percent of purchasers who would take advantage of the two cents cash discount is not controverted. It would seem, therefore, that the net *average* price per gallon with which National would have to compete is approximately 14¾¢. Three of plaintiff's witnesses testified they could compete at approximately 15¢ and one that it was "unable to meet General Gas Corporation's price cutting below 14¢ per gallon net."

In view of the fact that the period of delay pending trial was some nine months, and, if plaintiff sought to meet the quoted price, it might receive 14¾¢ net on the average, and in light of the testimony of the other competitors who could compete at a figure closely approximating this price, it appears that the proof of irreparable damage to the plaintiff was weak at best.

### III. The Public Interest.

■ In this price war, as is true in most such competitive conflicts, there is, of course, one party, the public, that benefits, at least temporarily. The public loses in the long run if the result of such a conflict eliminates the weaker competitor, leaving only one or two who monopolize the field. Any gain from temporarily lowered prices can then quickly be wiped out by a price increase that can be instituted by the sole winner. In the temporary injunction entered here, however, we think the right of the public to have the benefit of every legal price cut was inadvertently overlooked by the trial court. It appears without dispute that in nine counties out of the thirteen (these nine include some of the most populous) this product was selling at 17¢ net, and according to the contention of the appellant as to the service practice of its competitors (which the court found to be true as to plaintiff), possibly at the equivalent of 16¢. We think that the maintenance of a price of 20¢ less two cents for cash by court order is, on the record before us, unfair to the public

---

3. This proof was tendered in this court on General's motion for stay of the in-

junction. It therefore was not before the trial court.

whose interests it is the primary function of the antitrust acts to protect.

### IV. Competitive Position of Appellee.

The trial court expressly found that the plaintiff, as well as other competitors of appellant, made price cuts from time to time on an individual basis. The Court said:

"It appears from the record here that in the struggle for business there has been, both on the part of plaintiff and defendant, price cutting in vying for the business of individual consumers, but there had not been until the action of the defendant here complained of, an overall price reduction to all consumers within the competitive area."

In its injunction requiring the defendant to reestablish its general price structure of 20¢ less two cents, the court made the further provision:

"The injunction granted herein has no effect on customer sales that have been negotiated in the past, as a business practice, on a bid basis or a customer basis, nor shall it prevent such competition in the future."

Appellant contends that this order leaves the plaintiff below and the twelve other competitors free to sell at any price they see fit but prevents it from competing even on a customer to customer basis except to the extent that it can meet a price quoted to an individual customer by plaintiff or the other competitors.

On oral argument in this court appellee's counsel stated that appellee was doing nothing that was forbidden to the defendant. We think that since appellee is here contending for what it claims was a recognized status prior to June 1959, and in light of counsel's apparent acquiescence, whatever injunctive relief is granted to it should be equally binding on it.

The gist of the trial court's decision, as stated in its conclusion, is:

"It appears from the evidence here that competitors of the defendant corporation were cutting their prices from time to time on a customer basis and, while defendant contends that its broad price cuts in the Athens and Gainesville areas were good faith reductions to meet the equally low price of a competitor, it seems clear that there is this situation: The competitors of General were struggling for business and cutting prices on a customer basis and defendant, General, becoming tired of the struggle customer by customer, declared war with a drastic price reduction over the area in which plaintiff competes."

■ If it is ultimately proved that in making this price reduction over the whole area the appellant did no more than meet the lowest price of competitors in major parts of the trade area, we think there is considerable doubt whether this would afford a proper basis for granting either injunction or damages. We do not, however, decide this on this appeal, for as we said in Mansfield Hardwood Lumber Co. v. Johnson, 5 Cir., 242 F.2d 45, we regard as correct and controlling here what was said in Mytinger & Casselberry, Inc. v. Newman, 7 Cir., 215 F.2d 382:

"On appeal from decree for preliminary injunction sole issue before court was whether district court abused discretion, and merits of controversy would be left open for further consideration and future determination."

■ Applying this principle to this appeal, in light of the contested legal issues and the showing that, if resolved in favor of the plaintiff, it might be seriously damaged by the loss of customers if it did not compete on a basis that would cause financial loss which would be difficult if not impossible to measure, we cannot say that the granting of a temporary injunction was beyond the court's power. So long as the plaintiff and de-

fendant would be required to compete on an even basis the temporary injunction would not seriously injure the appellant if the competitive basis fixed in the injunction is made realistic as to the remaining competitors in the trade area.

We conclude that if the trial court should see fit to modify the temporary injunction so as to prohibit both the defendant and the plaintiff from selling or offering to sell to any domestic customer, except under existing unexpired contracts, for less than 18¢ with a two cent discount for cash within 10 days, and to commercial customers, defined as the court defined them in its findings of fact, for less than 16¢ less two cents, sufficient protection would be afforded to both parties without depriving the public of the benefits of a somewhat lower price than that prescribed in the order appealed from.

In suggesting such an order we do not, any more than did the trial court, resolve any of the issues, either legal or factual. These will then properly be determined on a full trial of the case.

We hold that in respect of the price of 20¢ less two cents for prompt payment, and 18¢ less two cents, the record did not support the court's findings. Moreover, we think that as to prices of 18¢ less two cents, and 16¢ less two cents, which we here suggest, the record would not support a holding that such general price, even if later found to be improper, would work any irreparable damage to the plaintiff.

This court cannot fashion such injunctive order, for it is not certain that the plaintiff would desire one in such a modified form. Moreover, the trial court should consider the other terms of any order it may see fit to enter. It is therefore necessary that the present order be set aside in order that the trial court may have a free hand within the limits of what we have said in this opinion and the prayers of the moving party to enter such order as it may consider right.

The injunction appealed from is vacated and the case remanded for further proceedings not inconsistent with this opinion. Costs of this appeal will be divided equally between the parties. Because of the seasonal nature of the business of both parties and the emergency of the appeal, it is ordered that the mandate shall be issued forthwith.