252 F.2d 372
 BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY & AGRICULTURAL & MECHANICAL COLLEGE et al., Appellants,
v.
Arnease LUDLEY et al., Appellees.
LOUISIANA STATE BOARD OF EDUCATION et al., Appellants,
v.
Alma LARK et al., Appellees.
LOUISIANA STATE BOARD OF EDUCATION et al., Appellants,
v.
Jack BAILEY et al., Appellees.
 Nos. 16854-16856.
 United States Court of Appeals Fifth Circuit.
 February 13, 1958.
 Rehearing Denied March 28, 1958.
 
 Jack P. F. Gremillion, Atty. Gen., George M. Ponder, 1st Asst. Atty. Gen., L. W. Brooks, Baton Rouge, La., William P. Schuler, New Orleans, La., William C. Bradley, Sp. Counsel for Atty. Gen., Baton Rouge, La., W. Scott Wilkinson, Shreveport, La., for appellants.
 A. P. Tureaud, New Orleans, La., Robert L. Carter, Thurgood Marshall, Jack Greenberg and Irma Robbins Feder, New York City, of counsel, for appellees.
 Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 These three appeals are from orders granting a temporary injunction forbidding the defendants, Louisiana State Board of Education and Board of Supervisors of Louisiana State University, to deny to any qualified applicant registration in three state institutions of higher education "because of failure of the applicant to present the certificate of eligibility," provided in a newly enacted Louisiana statute. The statute forbade, under penalty of a $500 fine for the officer ignoring its provision, any such institution to permit any student to register without filing a certificate "addressed to the particular institution sought to be entered" attesting to his eligibility and good moral character, such certificate to be signed by the superintendent of education of the Parish, County or municipality wherein said applicant graduated from high school, and by the principal of the high school from which he graduated."[1] It will be noted that the order of the trial court was for the benefit of all applicants for admission, thus giving recognition to the right of the individual plaintiffs to represent others in these class suits.
 
 
 2
 The trial court, after having granted temporary restraining orders under which the named plaintiffs were admitted to enrollment, consolidated the three cases for hearing on the interlocutory injunction. As they all present the same basic questions we shall treat them together, except to say that as to the intervening plaintiffs in No. 16,854, the court correctly decided that they could become parties to the suit.
 
 
 3
 The grounds for appeal here are: (1) These are suits against the State and may not be maintained in the federal court; (2) The suits attack state statutes as being unconstitutional, and therefore they should have been tried by a three-judge federal court rather than by a district court of one judge; (3) The Louisiana statute requiring the certificate of eligibility and character is not unconstitutional; (4) The evidence used to determine legislative intent was inadmissible; (5) The injunction should not have been granted without bond.
 
 
 4
 The able trial judges[2] dealt capably with the merits of the issue of constitutionality of the law. Their opinion is published at 150 F.Supp. 900. The views there expressed are adopted by us and need elaboration on one point only. This statute reposes in two named officials, a high school principal and a parish school superintendent the unfettered and uncontrolled power to grant or deny to a high school graduate the right to enter a college or university in Louisiana. It sets up no standards and expresses no outline of qualifications which are to guide these officials in the granting or withholding of the students' rights to go to a state supported college or university. In Orleans Parish School Board v. Bush, 5 Cir., 242 F.2d 156, 165, we said:
 
 
 5
 "Attempts by statute to give any official the power to assign students to schools arbitrarily according to whim or caprice are legally impermissible."
 
 
 6
 How much less permissible is it for a state by statute to say that a student must obtain the certificate of two named officials to entitle him to enter a tax supported educational institution where no objective standard is set by which the arbitrariness of the judgment of such officials in denying a certificate can be tested? The very absence of such standards condemns the statute as providing, by clearest implication, as the only standard: that of whether a Negro student seeks a certificate to a Negro college or seeks one to a white college. How more patently could this standard be expressed than the requirement that the certificate be not a certificate attesting to the eligibility and good character of the student generally, but that it be a certificate "addressed to the particular institution sought to be entered." The sophistry that produces such a patently void device stands out in stark outline in the pathetic effort of one high school principal to answer the request of a Negro student, the named plaintiff here, for a certificate of eligibility to enter Louisiana State University.
 
 
 7
 "Miss Arnease Ludley
208 West McKinley Street
Baton Rouge, Louisiana
 
 
 8
 "Dear Miss Ludley:
 
 
 9
 "Your request for a Certificate of Eligibility to attend Louisiana State University is hereby acknowledged. In reply I do not have a form of the Certificate of Eligibility addressed to that institution. If you should get a form and send it to me, I could not sign it, because under a state law I would lose my job for signing the certificate.
 
 
 10
 "I assure you that my refusal to sign the certificate is not intended to cast any unfavorable reflection against your character. I just can not take the risk of losing my job.
 
 
 11
 "Sincerely yours,
 "(Signed) Arthur D. Smith
 Principal"
 
 
 12
 Here a Negro school principal felt that he could not afford to sign a certificate of good character for one of his graduates because it was addressed to the State University, a "white" school, but conscious of the danger of such refusal to the reputation of the student, he felt constrained to tell her that his refusal to give her a certificate of good character was not to be taken as reflecting on her character at all. So, too, was the standard of race or color recognized by a white parish school superintendent who wrote:
 
 
 13
 "Mildred M. Meyers
Post Office Box 245
Hammond, La.
 
 
 14
 "Dear Student:
 
 
 15
 "In reply to your letter of January 17, I wish to say that neither Professor Davis nor I are permitted by law to sign certificates of eligibility for you to go to Louisiana State University, or one of the teachers colleges for white students.
 
 
 16
 "We are permitted, however, to sign certificates for you to attend Grambling or Southern College. I feel sure that you are familiar with the provisions of this state law. If you wish us to sign certificates for either Grambling or Southern College we shall be glad to do so.
 
 
 17
 "With best wishes, I am
 "Yours very truly,
 "(Signed) J. F. Corkern
 Superintendent"
 
 
 18
 Here, in plainest terms, the parish school superintendent says that the student's eligibility and moral character are good enough for a Negro college but, by arbitrary classification, are not good enough for the white State university. Whatever other standards may be prescribed as a basis for the obtaining of a certificate of eligibility and good character, race or color may not be used. This has been finally decided in Brown v. Board of Education of Topeka, Shawnee County, Kan., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and related cases. As we said in Orleans Parish Board of Education, in discussing the absence of any ascertainable standards for the action of the school officials there: "Such a statute is unconstitutional either because it has on its face the effect of depriving appellees of their liberty or property without due process of law (the failure to provide reasonable standard for testing the arbitrariness of an official act in assigning pupils to schools) or having implied as its only basis for assignments the prohibited standard of race." The same fault condemns this law. Either it attempts to give designated officials the power to exclude students from all state supported colleges without establishing objective standards which they can seek to satisfy or it implies the standard (which was the one recognized by the two authors of the above quoted letters) of race or color. The requirement in LSA-Rev.St. 17:2131-2135, that a student have a certificate of eligibility and good moral character addressed to a particular institution is in conflict with the Fourteenth Amendment to the Federal Constitution and must fall.
 
 
 19
 This conclusion is sufficient to condemn the statute without reference to the companion law adopted by the same legislature which denies teachers' tenure protection to any teacher (it was frankly admitted by appellant's counsel that this would apply to high school principals) found guilty of "advocating or in any manner * * * bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana * * *."[3] The bearing that the law has on the reluctance of a high school principal to sign a certificate of good character for a Negro student addressed to a "white" college is obvious. It was so effective, said the trial court, that "not a single principal of a public school or superintendent of a public school system has signed a certificate for a Negro to go to a white school." The courts can, of course, consider the two statutes together in seeking to find the legislative intent. Orleans Parish School Board v. Bush, supra.
 
 
 20
 The contention by appellants that these were suits against the State of Louisiana has been fully answered in Orleans Parish School Board v. Bush, and we would not need to answer it further if it were not for the contention here by the state that the adoption of an amendment to Article XIX, Sec. 26, of the state constitution, LSA, makes certain officials, including the defendants here, "special agencies of the State of Louisiana" and seeks to withhold the consent of the State of Louisiana to suits against it through suits against such officials. The determination as to whether a suit in a federal court against a state officer is a suit against the state and is thus prohibited by the Fourteenth Amendment is for the federal court to determine. In the recently decided case of Staub v. City of Baxley, 78 S.Ct. 277, 280, 2 L.Ed.2d 302, the Supreme Court quoted from First National Bank of Guthrie v. Anderson, 269 U.S. 341, 346, 46 S.Ct. 135, 70 L.Ed. 295:
 
 
 21
 "Whether a pleading sets up a sufficient right of action or defense, grounded on the Constitution or law of the United States, is necessarily a question of federal law."
 
 The Court then said:
 
 22
 "As Mr. Justice Holmes said in Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143, `Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the acsertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.'"
 
 
 23
 These suits are not suits against the State of Louisiana, and no amount of assertion that they are can make them so. Full relief can be obtained from the named defendants without requiring the State to take any affirmative action. This is the test. See, for our discussion of this point, Orleans Parish School Board v. Bush, supra, 242 F.2d at page 160.
 
 
 24
 As to the complaint that the injunction could be granted only by a three judge federal court, we repeat what the trial judges said: This contention was rejected in Orleans Parish School Board v. Bush, supra. There, as here, acts of the Louisiana state legislature and a provision of the Louisiana constitution were attacked as being in conflict with the constitution. The injunction was issued by a district court of a single judge and this was affirmed on appeal to this Court, and the Supreme Court denied certiorari, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436, and also denied a petition for mandamus to compel the creation of a three judge court to hear the case, 351 U.S. 948, 76 S.Ct. 854, 100 L.Ed. 1472. It is apparent that the requirement for the appointment of a three judge court does not apply in litigation in which there can be no real dispute as to the question of constitutionality that is drawn in issue by the suit seeking the injunction. There can be no real dispute where each separate element on which the state relies to support the constitutionality of a statute has been clearly and definitely put at rest by the Supreme Court contrary to the contention of the state. Such is the case here.
 
 
 25
 We come finally to the criticism of the trial court's considering the statements of state officials, including the members of the state legislature and its committees in construing the true meaning and intent of the statute. Although we have indicated above that this evidence was not required to support the court's ruling, nevertheless we do affirm the action of the trial court in construing the law in the light in which everyone else in the state construed it. This precise question was before the three-judge district court in Davis v. Schnell, 81 F.Supp. 872, 878, where the issue was as to the constitutionality of the "Boswell Amendment" to the Alabama constitution, Amend. No. 55. The court strongly relied on the "history of the period immediately preceding the adoption of the Boswell Amendment" in striking down the amendment as being designed to discriminate against Negro voters. This decision was affirmed without opinion by the Supreme Court, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093.
 
 
 26
 Little need be said as to the claim that the district court should have required bond for the granting of the temporary injunction. The requirement of bond in Rule 65(c), F.R.Civ.P. 28 U.S. C.A. is only for such security "as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Apparently the trial court did not deem it proper to require security under the circumstances found to exist. The same point was made without success in Board of Supervisors of Louisiana State University, etc. v. Tureaud, 5 Cir., 225 F.2d 434, as indicated in the dissenting opinion, 228 F.2d 895, 901. Moreover, this point was not urged in the court below and need not be considered on this appeal.
 
 
 27
 The judgments of the trial court are affirmed.
 
 
 
 Notes:
 
 
 [1]
 Act No. 15 of 1956, LSA-R.S. 17:2131 et seq
 
 
 [2]
 Chief Judge Christenberry and Judge Wright, of the District Court for the Eastern District of Louisiana, sat en banc
 
 
 [3]
 Act No. 249 of 1956, LSA-R.S. 17:443
 
 
 
 28
 HUTCHESON, Chief Judge (concurring specially).
 
 
 29
 I am in complete accord with all that is said, as well as all that is held, in the main opinion affirming the order granting a temporary injunction. Because, however, of the arguments of appellants that the record contains affidavits counter to those submitted on behalf of appellees and that on a trial the proof would should that the complained of statute has been administered impartially, uniformly and without regard to race or color, and because of the fact that, though the temporary injunction was issued on April 15, 1957, no effort has been made by the defendants to bring the cause to trial on its merits, I feel that it is necessary to call the attention of counsel to the fact that this case is not before us on the merits and to refer them to what was said at length in Mansfield Hardwood Lumber Co. v. Johnson, 5 Cir., 242 F.2d 45. This is that, though the appeal from the interlocutory injunction did not bring up the cause as a whole and "the case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken unless otherwise ordered",[1] the defendants, instead as they should of pressing the cause to trial on its merits and then, if they lost, bringing them up, in effect are here arguing the case as though it were an appeal from a final decision on the merits.
 
 
 
 Notes:
 
 
 [1]
 Ex parte National Enameling & Stamping Co., 201 U.S. 156, 26 S.Ct. 404, 50 L.Ed. 707; Lea v. Vasco Products, Inc., 5 Cir., 81 F.2d 1011; Douglass v. Pan-American Bus Lines, 5 Cir., 81 F.2d 222