Frederick SOLA et al., Plaintiffs,

v.

The Hon. Roberto SANCHEZ VILELLA, Governor of the Commonwealth of Puerto Rico, the Hon. Rafael Hernandez Colon, Secretary of Justice of the Commonwealth of Puerto Rico, Ernesto Mieres Calimano, General Supervisor of Elections, Samuel R. Quiñones and Baldomero Roig Velez, being and constituting the Commonwealth Board of Elections, and also in their individual capacities Ernesto Mieres Calimano, Samuel R. Quiñones, Baldomero Roig Velez, Carlos Romero Barcelo and Hector Alvarez Silva, being and constituting the Plebiscitary Board, and the Hon. Jorge Font Saldaña, Secretary of Finance of the Commonwealth of Puerto Rico, Defendants.

Civ. No. 456–67.

United States District Court
D. Puerto Rico.
July 14, 1967.

Manuel Nelson Zapata, New York City, Santos P. Amadeo, Rio Piedras, P. R., for plaintiffs.

Rafael Hernández Colón, Atty. Gen., Commonwealth of Puerto Rico, Rafarl A. Rivera Cruz, Asst. Atty. Gen., Commonwealth of Puerto Rico, Dept. of Justice, San Juan, P. R., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

On July 3, 1967, the fifteen plaintiffs filed a Complaint For Declaratory Judgment and Injunctive Relief, alleging that they are citizens of the United States and are at present citizens of the states of New York, New Jersey and Massachusetts. They state they migrated from Puerto Rico, where they were native inhabitants of the Commonwealth of Puerto Rico, to New York, New Jersey and Massachusetts. They proclaim they have an interest in the solution to the political status of Puerto Rico.

The thrust of their complaint is that they have all the qualifications necessary to vote in the plebiscite which is to occur on July 23, 1967, as authorized by Law Number 1 of the Commonwealth of Puerto Rico, except for the requirement of one year residence in Puerto Rico as required by that law. They complain that they wish to vote in the plebiscite but are unable to obtain a year of residence as required by Law Number 1 because that law authorizing the plebiscite was approved on December 23, 1966, and the date of the plebiscite was fixed for July 23, 1967, making it impossible for them to qualify.

The fifteen plaintiffs allege that they are representative parties of a class of others similarly situated and so numerous as to make it impractical to bring them before the Court in a single proceeding. They seek to make this action a class suit on behalf of themselves individually and on behalf of the class.

Plaintiffs state that they and the class they represent send annually to Puerto Rico approximately $80,000,000.00, and that they possess property within the jurisdiction of the Commonwealth of Puerto Rico.

Plaintiffs charge that Law Number 1 is invalid and unconstitutional because it violates United States Constitution Article I, Section 9(3), (4), Section 3(1), (6), Section 2, Article IX of the Treaty of Paris of 1898, and the following amendments to the Constitution of the United States. First, Fifth, Ninth, Tenth and Fourteenth, Section 1.

Concerning jurisdiction, plaintiffs allege this Court has jurisdiction pursuant to Title 28 U.S.C.A., Sections 1331, 1332, 1343(3), (4), 2201, 2202, 2281, and Title 42 U.S.C.A., Sections 1981 and 1983. They further say the amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.00, since each of the plaintiffs claims from each of the defendants the sum of $20,000.00 for unconstitutionally depriving them of the right to vote in the plebiscite on the political status of Puerto Rico, as authorized by Law Number 1 approved by the Legis-

lature of Puerto Rico on December 23, 1966.

With their Complaint for Declaratory Judgment and Injunctive Relief, plaintiffs have coupled their motion and request that a Three-Judge Court be convened pursuant to the provisions of Title 28, Section 2281.

On July 6, 1967, this Court issued its Order establishing a hearing on plaintiffs' motion for convening a Three-Judge District Court, and also affording all parties the opportunity to present any pertinent evidence they desired.

Prior to taking up the various questions presented by the present action, it is desirable to mention some of the past proceedings and history that touch upon the so-called plebiscite matter.

For some time the residents of Puerto Rico have given serious and intelligent thought to the future political status of Puerto Rico. Their thinking and discussion in the main has included three possible forms of political status; namely, 1. Commonwealth status, based on a common citizenship with the United States to be developed to the maximum that may be agreed between the Congress of the United States and Puerto Rico; 2. Statehood, equal to that of the other fifty states of the United States; and, 3. Independence as this status exists in the Latin republics of America.

On December 3, 1962, the Legislature of Puerto Rico proposed to the Congress of the United States the procedure for establishing the final political status of the people of Puerto Rico by means of joint resolution and resolving that the three mentioned possible statuses be submitted to the vote of the people of Puerto Rico. This matter was transmitted to Congress. No practical purpose would be served to set out in any detail the legislative handling of the matter by the United States Congress except to say that no final action of any kind was taken by Congress. There was concluded a study by the United States-Puerto Rico Commission on the status of Puerto Rico and a report thereof dated August 5, 1966, filed.

On December 23, 1966, the Legislature of Puerto Rico approved the earlier mentioned Act Number 1, "To provide for the holding of a plebiscite on the political status of Puerto Rico, * * * to provide for the registration of voters, * * *".

Pertinent provisions of Law Number 1 are: "A plebiscite is herein provided for, to be held on July 23, 1967, in which the people of Puerto Rico will express its will concerning its political status. Such plebiscite shall be held in a free, impartial and democratic manner in order that the electors qualified to vote therein may choose among; (A) Commonwealth, (B) Statehood, (C) Independence * * * A vote in favor of statehood shall mean: The authorization to ask the Congress of the United States of America to admit Puerto Rico as a federated state of the American Union. A vote in favor of independence shall mean: The authorization to ask the Congress for the independence of Puerto Rico from the United States of America.

"Section 2: It shall be understood that the people of Puerto Rico has expressed its will in favor of one of the three status formulas referred to in Section 1, if such formula has obtained more than fifty (50) percent of the total sum of the number of valid votes cast in the plebiscite for the three formulas. * * *

"Section 5: Entitled to vote at the plebiscite provided in this act shall be all those persons who on the date the same is held meet the requirements prescribed by the Constitution of the Commonwealth of Puerto Rico and the Election Law to be voters, including those who are duly registered at a registration that shall be held on February 26, 1967. * * *"

This suit is the fifth one to be filed since March 20, 1967, in an attempt to have Law Number 1 declared invalid and to enjoin those responsible for administering the plebiscite from undertaking to do so.

On March 20, 1967, fifteen plaintiffs filed suit against the Governor of the Commonwealth of Puerto Rico and other

State officials, challenging the validity of Law Number 1 on the grounds: (A) The Plebiscitary Board, pursuant to Law Number 1, was committing $1,075,000.00 in effect to underwrite the plebiscite; (B) That Law Number 1 violates the following Articles and Amendments of the United States Constitution; Article I, Section 1, Section 8(1) and (3), Article IV, Section 3, Clause 2, Article VI, Clause 2, Article I, Section 9(3) and 10(1); and (C) The Treaty of Paris of 1898; (D) Plaintiffs and the class they represent are unlawfully deprived of the fundamental right to cast a meaningful vote and are disenfranchised and denied the right to vote in violation of the First, Fifth, Fourteenth, Fifteenth and Nineteenth Amendments to the Constitution of the United States, and in derogation of Title 42, Sections 1971(a) (1), (2), 1981, 1983, 1985(3), and 1986, United States Code; (E) Denied rights of association, assembly, petition, and to vote, in derogation of the First, Fifth, Fourteenth, Fifteenth and Nineteenth Amendments to the Constitution of the United States; (F) Denied procedural guarantees by due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States and the Equal Protection Clause, in derogation of the Fifth and Fourteenth Amendments to the Constitution of the United States; and (G) Denied right of dissent from all three status choices in derogation of the First, Fifteenth and Nineteenth Amendments to the Constitution of the United States.

Coupled with the complaint was the motion of plaintiffs to convene a Three-Judge District Court and a motion for a preliminary injunction. The defendants appeared by counsel and moved to dismiss the complaint.

After a hearing on the matter, the Honorable Andrew A. Caffrey, United States District Judge, Assigned, denied the motion to convene a Three-Judge District Court and the motion for a preliminary injunction, and granted the motion to dismiss the complaint. In a well reasoned written opinion Judge Caffrey held: (1) That the complaint did not raise a substantial Federal question of the type required to provide the basis for convening a Three-Judge District Court, citing Idlewild Bon Voyage Liquor Corporation v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 and (2) That plaintiffs failed to demonstrate they are presently threatened with any irreparable damage or injury because of Law Number 1. Judge Caffrey noted that during argument counsel for plaintiffs conceded that it is doubtful that the results of the plebiscite would in fact be binding on the Puerto Rican Legislature, and that concededly it would not bind the Congress of the United States—that as a corollary thereto, the legal status, rights or American citizenship of all the residents of Puerto Rico will remain unchanged despite the plebiscite.

Although initial arrangements were made by plaintiffs' counsel to appeal Judge Caffrey's decision, and some arrangements made with the First Federal Circuit Court of Appeals, for reasons which do not appear of record, the appeal was apparently abandoned.

In the second case, on May 16, 1967, three plaintiffs, Raol Diaz De Arana, Carlos Westerband and Luis Escribano Dias, brought an action on their behalf and on behalf of all persons similarly situated, alleging that they were citizens of the United States and residents of the Commonwealth of Puerto Rico, and qualified voters of the Commonwealth. They challenged the validity of Act Number 1 for the reasons (A) It provided no place for plaintiffs to exercise their right of dissent by voting against the plebiscite, (B) Because the result of the plebiscite might have a tremendous impact on the Congress of the United States in determining the final political status of the island without permitting plaintiffs to vote against the plebiscite, contrary to due process of law and the Equal Protection Clause as guaranteed by the Fifth Amendment of the Constitution of the United States, as well as the First Amendment, by depriving them of the right of dissent, of free

speech, free press, right to petition Congress and the Puerto Rican government for redress of grievances, (C) Constituted political punishment to those against the plebiscite, (D) Conflicts with the Ninth Amendment of the Constitution of the United States, (E) Section 1 of the Fourteenth Amendment, (F) Section 3 of Article IV of the United States Constitution, and (G) The Treaty of Paris of 1898.

The three plaintiffs combined in their complaint their Motion for Convening a Three-Judge District Court. The defendants moved to dismiss the complaint and the motion. The Honorable Pierson M. Hall, sitting as United States District Judge by Special Assignment, after hearing, denied the Motion to Convene a Three-Judge Court and sustained the Motion to Dismiss the Complaint.

No appeal was taken.

In the third suit, filed on May 26, 1967, on behalf of a non-profit political association, among others, including named individuals as taxpayers of the Commonwealth of Puerto Rico, Law Number 1 was again attacked as being unconstitutional, as violating the First, Fifth and Fourteenth Amendments of the Constitution of the United States. The plaintiffs alleged that the Court had jurisdiction because a Federal question is involved, and because the amount in controversy exceeded $10,000.00, including costs and interest. Coupled with the complaint was a Motion for Preliminary Injunction and for the convening of a Three-Judge Court. The Honorable Robert Van Pelt, United States District Judge, Sitting by Assignment, after hearing, denied the application for a temporary injunction, denied the request for a Three-Judge Court, and dismissed the complaint. In so doing he ruled that plaintiffs had no standing to raise the question of the use of public funds for a private purpose, as well as lack of standing on the other matters, and that under the opinion by Chief Judge Aldrich of the First Federal Circuit Court of Appeals, Benoit v. Gardner, 351 F.2d 846, there was authority to dismiss the case.

No appeal was taken.

The fourth case was filed on June 21, 1967, by three plaintiffs who sought to strike down Law Number 1 as being unconstitutional, and to obtain injunctive relief. Their petition alleged the amount in controversy exceeded $10,-000.00 because each plaintiff was deprived of the right to vote against the plebiscite, causing $20,000.00 damage each. Specifically, plaintiffs claimed Law Number 1 violated the Fourteenth, Ninth, Fifth and First Amendments of the Constitution of the United States. They stated that even if the plebiscite does not automatically decide the political status of Puerto Rico, the result may have a tremendous impact on the Congress of the United States in that respect, and yet the law indirectly prohibits plaintiffs from voting by failing to provide a dissent from the plebiscite itself. According to the complaint, the plaintiffs are citizens of the United States and of the Commonwealth of Puerto Rico and qualified voters and taxpayers of the Commonwealth.

Coupled with the complaint was a request for a Three-Judge Court and for injunctive relief.

On June 30, 1967, Judge Van Pelt, who had heard this case, issued his Memorandum and Order in which he noted the striking similarity between this case and the mentioned case of Judge Hall, and denied plaintiffs' request for a Three-Judge Court and sustained defendant's request for dismissal of the action.

No appeal was taken.

On July 3, 1967, the instant complaint, as mentioned, was filed. It is noteworthy that of the five suits brought challenging Law Number 1, four were filed by the same counsel on behalf of the plaintiffs, including the present one.

In the present case the threshold question is whether these plaintiffs have the requisite standing to bring this suit. Admittedly, and as stated in their complaint, they are residents of one of three

states, New York, New Jersey or Massachusetts, where they have resided for many years. They are not citizens or residents of Puerto Rico, although they may sometimes decide to return to Puerto Rico to live, and have "an interest" in the solution of the political status of Puerto Rico. They possess property in Puerto Rico. These facts are insufficient to give plaintiffs the requisite standing to bring this suit. Plaintiffs are in no different a position than a citizen and resident of New York, or New Jersey or Massachusetts, who was born, for example, in Missouri, and to economically better himself moved to the other state and became a citizen and resident of this state, and who, although owning property in Missouri and having nostalgia for Missouri, can not meet the citizenship and the residential requirements for voting in a Missouri held election, even though the Missouri election may be on such fundamental matters as amending the State Constitution or adopting a new one. See, 25 Am.Jur.2d, Elections, Section 66, pages 75 ff. And this is so even assuming arguendo that a plebiscite is the equivalent of an election in its fullest sense. Technically, the interest of these plaintiffs in the plebiscite is purely personal rather than legal, and can be expressed by their corresponding with their own states' particular senators or representatives in Congress, who in turn can bring plaintiffs' views to the attention of Congress just as the results of the plebiscite would advise Congress of the views of those who vote in it.

 It is basic law that no one can obtain a decision as to the invalidity of a statute on the ground that it impairs the rights of others. To meet the test of interest requisite to give standing to challenge the constitutionality of legislation, one must show that he is directly affected by the legislation in question. Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149. It is not enough to show that he suffers in some indefinite way in common with people generally. He must show that he himself is injured by the statute's operation, and that

the statute is unconstitutional as to him. See, Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603; Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. This the plaintiffs have failed to do, and, as earlier indicated, they do not possess the requisite standing to bring this suit.

 There is an additional reason why plaintiffs' motion to convene a Three-Judge Court must fail, even assuming they had standing. This additional reason is that plaintiffs have not presented in their complaint a substantial Federal Constitutional question. They fail to show how or in what manner the plebiscite, which is no more than an official poll of the individual desires of the citizens and residents of the Commonwealth of Puerto Rico participating therein as to their future political status, violates Constitutional principles. It is the law that a state has power to impose reasonable residence restrictions on the availability of the state ballot, and state constitutions and statutes generally require as a prerequisite to the right to vote that the elector in the state election shall have been a resident of the state for a specified period prior to the election. See, Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675; 25 Am.Jur.2d, Elections, Section 66, page 758. Such provision is not merely to help identify the voter or to protect against fraud, but affords some protection against those who have been living in the state only a short time, or who have ceased to be a resident of the state and have no reasonable or current interest or opportunity to be informed voters on the particular local matter because not personally residing there.

During oral argument counsel for plaintiffs asserted that Puerto Ricans presently residing in and citizens of one of the fifty states have had a different political experience than those who have remained in Puerto Rico and are citizens of the Commonwealth of Puerto Rico; intimating such different experience would result in their voting a different choice of political status based on their

political experience gained outside of the Commonwealth of Puerto Rico.

Three different Federal District Court Judges, on assignment to Puerto Rico, have previously heard and ruled the substantiality issue adversely to the plaintiffs in those suits. No appeal was taken from those decisions, although those three judges had refused to call a Three-Judge Federal Court on the ground they had no duty to do so under Title 28 U.S.C., Section 2281, because of the lack of a substantial Federal question.

In 77 Harvard Law Review 299 the subject of the Three-Judge District Court under Title 28 U.S.C., Section 2281, is discussed. There it is pointed out that in establishing the extraordinary procedure of the Three-Judge District Court, Congress (1) was seeking to assuage the pride of state legislators affronted by the spectacle of a single Federal Judge obstructing enforcement of their enactments, (2) was seeking to improve the quality of the deliberation preceding the issuance of injunctions, and (3) Congress was not acting to benefit the complaining party, whose interests were indeed thought to be too well protected by the unfettered single District Judge prone to improvidently grant decrees. See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194.

In Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990, a single judge is held empowered to decide whether a particular action requires adjudication by a Three-Judge Court. In Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, it was held (absent diversity jurisdiction) the question of whether a substantial Federal question was present was jurisdictional and consequently within the competence of a single District Judge to decide. Clearly, when a single judge *dismisses* a suit for an injunction, the state's interests are not infringed, and the three-judge procedure was thought intended by Congress to protect the state rather than the plaintiff. Conversely, where a constitutional question is clear and beyond any reasonable dispute, and is "no longer open", or is essentially fictitious, or frivolous, it would appear that there is no duty to assemble a Three-Judge Court. See, Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; Board of Supervisors of Louisiana State, etc., College v. Ludley, 5 Cir., 252 F.2d 372, cert. den., 358 U.S. 819, 79 S.Ct. 31, 3 L.Ed.2d 61; cf. Idlewild Bon Voyage Liquor Corporation v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794. Certainly this would seem to be the view of the First Circuit Court of Appeals as expressed by Chief Judge Aldrich in Benoit v. Gardner, 345 F.2d 792, rehearing, 351 F.2d 846, where dismissal of the request for a Three-Judge Court by the single District Court was affirmed.

Plaintiffs also contend that Law Number 1 has the effect of depriving them of their civil rights, namely, to vote in the July 23, 1967, plebiscite, and that this Court has jurisdiction pursuant to Title 42, U.S.C., Section 1983, the Civil Rights Act, and because there is diversity of jurisdiction in that plaintiffs all reside outside Puerto Rico and sue for $20,000.00 each under the Civil Rights Act. However, these particular plaintiffs, and the class they desire to represent, do not possess standing to make such a contention, and, this for the reasons above set out concerning the lack of standing of plaintiffs to bring this suit. Their complaint clearly discloses on its face the fact that they have not been deprived of or denied any right, statutory or constitutional, by reason of Law Number 1. Thus, not only do plaintiffs lack standing to make this contention, but also their contention itself as pleaded in their complaint fails to state a claim on which relief can be granted and totally lacks substantiality.

Plaintiffs contend that Law Number 1 is invalid under the Treaty of Paris of 1898 (1 Laws of Puerto Rico, annotated, page 17 ff.). Plaintiffs suggest reliance on that portion of the Treaty which is italicized:

"Spanish subjects, natives of the Peninsula, residing in the territory over which Spain by the present treaty re-

linquishes or cedes her sovereignty, may remain in such territory or may remove therefrom, retaining in either event all their rights of property, including the right to sell or dispose of such property or of its proceeds; and they shall also have the right to carry on their industry, commerce and professions, being subject in respect thereof to such laws as are applicable to other foreigners. In case they remain in the territory they may preserve their allegiance to the Crown of Spain by making, before a court of record, within a year from the date of the exchange of ratifications of this treaty, a declaration of their decision to preserve such allegiance; in default of which declaration they shall be held to have renounced it and to have adopted the nationality of the territory in which they may reside. *The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress.*"

It is clear that the July 23, 1967, plebiscite does not take away or deprive the United States Congress of its right under Article IX, Treaty of Paris, to determine the civil rights and political status of the native inhabitants of the territories ceded in 1898 to the United States. The July 23, 1967, plebiscite has no effect on the Treaty of Paris or the power of Congress thereunder. As a matter of historical note, in 1917 Congress extended United States citizenship to native inhabitants of Puerto Rico through the Jones Act, 39 Stat. 953. The permanency of United States citizenship is described in the United States Supreme Court opinion, Afroyim v. Rusk, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757, decided May 29, 1967. Additionally, if more be called for, in Swift & Company v. Wickham, 382 U.S. 111, 127, 86 S.Ct. 258, 15 L.Ed.2d 194, the United States Supreme Court made it clear that Section 2281 does not apply to contended conflicts between state statutes and treaties.

For the aforesaid reasons, plaintiffs' motion for a Three-Judge Court is denied and defendants' motion to dismiss this case is sustained, and this case is hereby dismissed.

It is so ordered.