**Edward P. DAMERON, III, Plaintiff,**

**v.**

**TANGIPAHOA PARISH POLICE JURY** and Luther Finch, its President, Tangipahoe Parish School Board and C. P. Schwartz, its President, Tangipahoa Parish Democratic Executive Committee and Charles A. Branch, its President, John J. McKeithen, Governor of the State of Louisiana, Wade O. Martin, Jr., Secretary of State of the State of Louisiana, Jack P. F. Gremillion, Attorney General of the State of Louisiana, Defendants.

**Civ. A. No. 69–1656.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 25, 1970.

Supplemental Opinion July 7, 1970.

Arthur W. Macy, Hammond, La., for plaintiff.

Joseph E. Anzalone, Jr., Independence, La., for defendants.

RUBIN, District Judge:

In this civil rights action brought under 42 U.S.C. § 1983, plaintiff challenges the apportionment of the Tangipahoa Parish Police Jury and School

Board. He charges that these elected local governing bodies are presently constituted so as to deny him equal representation in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. A consent decree has been entered with regard to the Police Jury and, with the agreement of both parties, the Court has enjoined the School Board from making any serious policy decisions, pending a ruling on plaintiff's motion for summary judgment. The matter has been submitted on that motion.

 Tangipahoa Parish is composed of eight wards, each of which elects one or more members of the Parish School Board. The Board has general authority over public education throughout the Parish, directing the school district's financial program and managing its property as well as setting broad educational policy and making specific decisions on such matters as teacher hiring and pupil assignment. See LSA–R.S. 17:81 et seq. The Fourteenth Amendment entitles each voter to have his vote given equal weight without regard to geography or other extraneous considerations; that commandment applies to this elected School Board.

As the Supreme Court declared in Hadley v. Junior College District, 1970, 397 U.S. 50, 56, 90 S.Ct. 791, 795, 25 L.Ed.2d 45.

[A]s a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far

as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials. * * * Education has traditionally been a vital governmental function, and [the junior college district trustees] are governmental officials in every relevant sense of that term.

The only differences between the present case and the one presented in *Hadley* make this an even stronger case for reapportionment. The immediate importance to the individual voter of having equal representation on the board that runs the basic public school system of the Parish is much more obvious than his concern with the governance of the local junior college. The elected local school board traditionally exercises governmental authority over matters of utmost significance to all the people within its jurisdiction. It does not represent an experimental means of handling newly instituted state administrative matters, as the dissent in *Hadley* characterized the Missouri junior college districts.

Moreover, the undisputed factual allegations in the complaint and the uncontradicted affidavits filed by plaintiff demonstrate that the residents of the various wards in Tangipahoa do not cast votes of equal value. No attempt has been made to supply a rational explanation for the variations in numerical representation. Apparently it was not deliberate, but resulted from lack of interest in or concern for keeping the electoral district boundaries in line with population shifts. The Louisiana statutes under which the present Board was elected specify simply that School Board members are to be elected by wards.[1] No state interest in creating or retaining School Board electoral districts that do not provide equal representation to all Parish residents has been suggested. In Tangipahoa Parish the disparities in

1. In fact, the 1968 Act authorizing school boards to reapportion themselves without regard to police jury wards, LSA–R.S. 17:71.1–17:71.6, supersedes that earlier statute and demonstrates that the state has no interest in perpetuating electoral districts that do not follow the strict population principle. The Louisiana reapportionment statute is discussed *infra.*

voting power, resulting solely from geographic discrimination, reach unconstitutional proportions.

■ Plaintiff is a resident of and registered voter in Ward 7. The most populous ward in the Parish, Ward 7 includes the city of Hammond, Tangipahoa's largest urban center; following the pattern of so many reapportionment cases, it is the district most significantly underrepresented on the School Board. According to the 1960 census figures, 5,565 voters in Ward 7 elect one School Board member while 1,415 voters in adjoining Ward 8 also elect one member— a voter in Hammond is given one-fourth the representation on the School Board that a voter in Ward 8 receives. While this is the grossest disparity, the variations in voting strength among the other wards also transcend the minor deviation that might be justifiable from the requirement that every man is entitled not only to cast a ballot but to have it counted as an equal vote. In six wards, it takes at least three voters to have the effect on the election that only two voters in the more sparsely populated wards have; this minimum variation of 1.5 to 1 is an impermissible discrimination among voters. Swann v. Adams, 1967, 385 U.S. 440, 87 S.Ct. 569, 17 L. Ed.2d 501; Kilgarlin v. Hill, 1967, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771; rehearing denied, 386 U.S. 999, 87 S.Ct. 1300, 18 L.Ed.2d 352.

■ In the light of these facts, defendant does not seriously contest the charge that the present School Board apportionment is unconstitutional. The real controversy in this case centers on what must be done to bring the Board within the law. Plaintiff demands that some action be taken to correct the distortions immediately, and defendant requests that any reform effort be delayed until the completion of the 1970 census. Pointing out that it will be obligated by Louisiana law to reapportion itself when that census data is received, the Board contends that it is restricted by the state statute presently in effect from changing its makup.

LSA–R.S. 17:52 provides for the election of School Board members from each ward, in a number corresponding to the number of police jurors from that ward.[2] LSA–R.S. 17:71.1–17:71.6, enacted in 1968, prescribes complete reapportionment on a population basis, "based upon the 1970 federal census, or a special census as authorized" to be commissioned by the School Board. The School Boards are given complete flexibility in devising their own reapportionment plans, and are specifically authorized to "create such special school board election districts as [they] deem desirable which * * * need not * * * have any relation to * * * the wards or precincts that may be created by the police jury," LSA–R.S. 17:71.3. The 1968 Act stipulates that the present laws shall be repealed as to each Board as soon as its new reapportionment plan is put into effect, and sets a January 1, 1972 deadline. Thus, the Tangipahoa Parish School Board is expressly permitted by Louisiana law to set its own reapportionment schedule and, in the exercise of its statutorily bestowed discretion it may implement a partial reform pending full-scale redistricting.

Some accommodation to the population principle is necessary immediately, while the Board prepares for a more comprehensive revision. The Tangipahoa Parish schools are completing their first year of full integration; the present School Board has been diligent and conscientious in handling the problems that situation has presented, but it is important that the decisions and actions taken in this crucial period reflect a truly representative judgment as accurately as possible. It is especially desirable that its actions be taken by elected officials representing a real ma-

2. Presently the School Board has a larger membership than the Police Jury. The proper size of the School Board under State law will have to be determined at the time a permanent redistricting plan is adopted.

jority of the electors in order to obtain maximum public acceptance.

Plaintiff urges either that a special election based on the results of a special census be held immediately, or that the School Board adopt a program of weighted voting so that the more populous areas can have their proportionate influence in School Board decisions, although they do not yet have a proportionate number of representatives. The 1970 federal census forms have already been filled out and returned, and the more detailed canvass is underway. It would be impractical to require this Parish to spend time and money on a special census and election simply to anticipate by a few months the information that will soon be provided to it free.

There are several objections to weighted voting as a means of complying with the "one man, one vote" precept. Plainly, giving greater proportionate influence to some representatives ameliorates the effect of the geographic discrimination, but it does not change the fact that the voters do not exercise a completely equal franchise. The underrepresented *region* is afforded its due weight in the decision-making forum, but the individual voters still do not receive a full opportunity to select their representatives. See WMCA, Inc. v. Lomenzo, SDNY, 238 F.Supp. 916, aff'd per curiam, 1965, 382 U.S. 4, 86 S.Ct. 24, 15 L.Ed.2d 2, vacated as moot, 1966, 384 U.S. 887, 86 S.Ct. 1907, 16 L.Ed.2d 991; Comment, Equal Representation and the Weighted Voting Alternative, 1969, 79 Yale L.J. 311.

■ However, while weighted voting may not be a desirable method for permanent reapportionment, it comes closer to the constitutional requirement of equal representation than does the present geographically discriminatory setup. Therefore, so long as the weighted voting plan is not shown to import its own discrimination, geographic or otherwise, it is an acceptable palliative until

a permanent plan can be formulated.[3] This is all that can be required of a temporary "band-aid," as long as adequate relief is imminent. Kilgarlin v. Hill, *supra*; Burns v. Richardson, 1966, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376.

Furthermore, some of the factors that might make weighted voting inappropriate at the state level are not present in the voting of a local school board. Thus the fact that the constituents would still be deprived of the nonvoting benefits of full representation (membership on legislative committees, regional negotiating power, etc.) is not a significant problem in this small, relatively homogeneous Parish. Indeed, in WMCA, Inc. v. Lomenzo, *supra*, the district court said in a footnote, "We express no opinion on the use of fractional or weighted voting either as a temporary device to remedy malapportionment or in governmental organs below the state level," 238 F.Supp. at 924, n. 2. See Bianchi v. Griffing, E.D.N.Y., 1966, 256 F.Supp. 617, reversed on other grounds, Moody v. Flowers, 1967, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643.

For these reasons, plaintiff's motion for summary judgment is hereby granted.

## JUDGMENT AND ORDER

It is hereby ordered that defendant School Board present to this court, within 15 days, an interim plan for weighted voting, that will accord to the School Board members from each ward voting strength in the following proportions:

| Ward | |
|---|---|
| Ward 1 | 7.7% |
| Ward 2 | 2.7% |
| Ward 3 | 15.7% |
| Ward 4 | 4.7% |
| Ward 5 | 5.3% |
| Ward 6 | 14.7% |
| Ward 7 | 46.8% |
| Ward 8 | 2.5% |

It is further ordered that this court's preliminary injunction against the School

3. This course was followed in LeBlanc v. Rapides Parish Police Jury et al., W.D. La.1969, 315 F.Supp. 783, ordering reapportionment of the school board of that Parish.

Board shall remain in effect until the interim plan for weighted voting specified above shall be accepted by this court.

It is further ordered that, if a permanent reapportionment plan cannot be put into effect before the 1970 school board election, defendant shall satisfy this court that that election will not alter the proportional representation guaranteed to each ward by this judgment.

It is further ordered that, within 30 days after receiving the 1970 federal census results, defendant shall present to this court a plan to redistribute the proportional voting strength assigned to each ward, so that the interim weighted voting plan will reflect the most recent population figures as accurately as possible, until such time as permanent redistricting can be put into effect.

It is further ordered that, within 60 days after receiving the 1970 federal census results, defendant shall present to this court a permanent plan of reapportionment based solely on population, that provides for all voters in the Parish representation as nearly equal as is possible, and that otherwise complies with the Fourteenth Amendment and with LSA–R.S. 17:71.1–17:71.6.

### SUPPLEMENTAL OPINION

Having considered the decisions of the Supreme Court in Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512, and Turner v. Memphis, 1962, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762, and the decision of the Fifth Circuit in Board of Supervisors, etc. v. Ludley, 5 Cir. 1958, 252 F.2d 372, I have concluded that this case was properly heard before a single district judge, and that the order previously entered herein should stand, as a permanent injunction.

■ Although, under the rationale of Simon v. Landry, 5 Cir. 1966, 359 F.2d 67, and Sailors v. Board of Education, 1967, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650, the instant case did involve invoking the constitution to enjoin the action of state officials pursuant to a

law of statewide applicability, it was not necessary for a three-judge court to hear it because the constitutional question was no longer a debatable one. In *Bailey, supra,* the Supreme Court recited the settled doctrine, "Section 2281 [Title 28, U.S.C.] does not require a three-judge court when the claim that a statute is unconstitutional is wholly insubstantial, legally speaking nonexistent," and ruled that the converse is also true: "We hold that three judges are similarly not required when, as here, prior decisions make frivolous any claim that a state statute on its face is not unconstitutional," 369 U.S. at 33, 82 S.Ct. at 551. *Bailey* was immediately followed by *Turner, supra,* where the Court held a three-judge court was not necessary to enjoin action pursuant to a state statute requiring racial segregation in public facilities.

These Supreme Court cases confirmed the decision of the Fifth Circuit in *Ludley, supra,* a case involving school segregation, where the Court of Appeals announced the rule in language directly applicable to the present reapportionment case. Judge Tuttle declared:

"It is apparent that the requirement for the appointment of a three judge court does not apply in litigation in which there can be no real dispute as to the question of constitutionality that is drawn in issue by the suit seeking the injunction. There can be no real dispute where each separate element on which the state relies to support the constitutionality of a statute has been clearly and definitely put at rest by the Supreme Court contrary to the contention of the state. Such is the case here." 252 F.2d at 376.

In a situation almost identical with the instant case, the Supreme Court has held applicable the Fourteenth Amendment mandate that the apportionment of elected representative bodies must reflect population distribution as nearly as possible, Hadley v. Junior College District, 1970, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45. In a host of cases the Court has held that disparities in voting power

to the degree present here violate that mandate. The Board did not even suggest that it was not under a constitutional and statutory duty to reapportion itself, but simply contested the mode and urgency of the relief requested. Under these circumstances, it is clear that there is no substantial constitutional question to present to a three-judge court.