**J. Hall LeBLANC and H. P. Edwards**

**v.**

**RAPIDES PARISH POLICE JURY et al.**

**Civ. A. No. 13715.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

Dec. 24, 1969.

---

Camille F. Gravel, Jr., Alexandria, La., for plaintiffs.

Edwin O. Ware, Dist. Atty., Alexandria, La., for defendants.

HUNTER, District Judge:

J. Hall LeBlanc, a registered voter of Rapides Parish, Louisiana, brought this class action to procure reapportionment of the Rapides Parish School Board.[1] The suit is predicated on the theory that there is a wide disparity between the population of Ward One, and the populations of the other Wards which comprise Rapides Parish. Consequently, plaintiff urges that this situation causes the efficacy of his representation (and that of all members of his class similarly situated) on the School Board to be diluted in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution, and seeks a declaratory judgment to that effect.

The relevant facts are not in dispute. As a political subdivision of the State of Louisiana, Rapides Parish is governed by a school board composed of eighteen members who represent eleven Wards. As reflected by the 1960 United States Census, the populations of the various Wards were as follows:

| | |
|---|---|
| Ward 1 | 52,781 |
| Ward 2 | 3,575 |
| Ward 3 | 4,642 |
| Ward 4 | 4,512 |
| Ward 5 | 1,878 |
| Ward 6 | 1,646 |
| Ward 7 | 4,412 |
| Ward 8 | 7,339 |
| Ward 9 | 16,304 |
| Ward 10 | 10,447 |
| Ward 11 | 3,815 |

Six School Board members are elected by the voters of Ward 1. The remain-

1. LeBlanc is also an elected member of the Rapides Parish Police Jury.

ing wards are represented by one elected member each, except Wards 8 and 9, which have two representatives each.

■ Citing the landmark cases of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), and Simon v. Landry, 286 F.Supp. 60 (W.D. La. 1968) (which held that apportionment of Louisiana Police Juries is governed by the rationale of *Reynolds*), plaintiff urges that the noted population figures clearly demonstrate that the Rapides Parish School Board is malapportioned. We conclude that under any of the three tests espoused in Bannister v. Davis, 263 F.Supp. 202 (E.D. La. 1966) the School Board is wrongly apportioned:

1. Population variance;[2]
2. Maximum detrimental deviation from average percentage;[3]
3. Minimum controlling factor.[4]

It is true that *Reynolds* does not require a "mathematical exactness or precision" in populations comprising the various geographic subdivisions from which members are chosen. While we are completely sympathetic with defendants' position, and note that we are not dealing with single-member districts as were *Reynolds* and *Avery*. We are constrained by the concepts and language of those cases to hold that Rapides Parish's School Board is malapportioned insofar as that apportionment relates to the election of members. Such concepts are embodied in the following language:

From *Reynolds*—

" * * * To the extent that a citizens' right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for overweighting or diluting the efficacy of his vote." 377 U.S. page 567, 84 S.Ct. page 1384.

From *Avery*—

" * * * [Petitioner] has a right to a vote for the Commissioners Court of substantially equal weight to the vote of every other resident." 390 U.S. page 476, 88 S.Ct. page 1116.

" * * * Government—National, State, and local—must grant to each citizen the equal protection of its laws, which includes an equal opportunity to influence the election of lawmakers, no matter how large the majority wishing to deprive other citizens of equal treatment or how small the minority who object to their mistreatment." 390 U.S. page 482, 88 S.Ct. page 1119.

" * * * the votes of some residents have greater weight than those of others; in both cases the equal protection of the laws has been denied." 390 U.S. pages 480–481, 88 S.Ct. page 1118.

" * * * We hold today only that the Constitution permits no substantial variation in equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body." 390 U.S. pages 484–485, 88 S.Ct. page 1120.

From *Simon*—

" * * * the Constitution permits no substantial variation from equal population when drawing districts for units of local government having general governmental powers over the entire geographical area served. *The apportionment of Louisiana Police Juries is governed by Reynolds.*"

---

2. The ratio between the average population per school board member in the most over-represented voting district and average population per representative in this most under-represented district.

3. Comparison of population per representative in the most under-represented district with the average population per representative.

4. Minimum percentages of the population necessary to elect a majority of the governing body.

(Emphasis added) 286 F.Supp. page 61.

As was said in *Simon*—

"The provision of proper relief to implement this decision causes us much concern. Surely, the formulation of a constitutionally acceptable method of selecting a board to administer the affairs of a parish is more properly a legislative function than a judicial one. Accordingly, a proper solution is to afford the Police Jury an opportunity to reapportion itself. \* \* \* " Page 61.

■ A majority of the Rapides Parish School Board members has recommended a plan whereby seven members would be elected at large without regard to residence, and eleven members would be elected by the voters of the entire parish, one being required to reside in each of the eleven wards. This is the Virginia Beach Plan which was specifically approved by the United States Supreme Court in Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967). The Supreme Court reiterated its approval of a plan similar to the one submitted in *Avery*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). This Court has on several occasions expressed an opinion that such a plan would meet the constitutional requirements of the one man—one vote principle. However, in 1969 the Supreme Court decided the case of Fairley v. Patterson, 393 U.S. 544, 89 S.Ct. 817, 846, 22 L.Ed.2d 1, decided March 3, 1969. In *Fairley* the Supreme Court limited the right of the states, subject to the Voting Rights Act of 1965 to change from Ward to at-large voting without first complying with Section 5 of the Voting Rights Act. Justice Black dissented and said:

" \* \* \* Section 5 provides that several Southern States cannot effectively amend either their constitutions or laws relating to voting without persuading the United States Attorney General or the United States District Court for the District of Columbia that the proposed changes in state laws do not have the purpose and will not have the effect of denying to citizens the right to vote on account of race or color. This is reminiscent of old Reconstruction days when soldiers controlled the South and when those States were compelled to make reports to military commanders of what they did. The Southern States were at that time deprived of their right to pass laws on the premise that they were not then a part of the Union and therefore could be treated with all the harshness meted out to conquered provinces. The constitutionality of that doctrine was certainly not clear at that time. And whether the doctrine was constitutional or not, I had thought that the whole Nation had long since repented of the application of this "conquered province" concept, even as to the time immediately following the bitter Civil War."

But, Justice Black's opinion, so eloquently expressed, did not become the law. It was only a dissent. The majority opinion is the law and must be followed by this Court. Attached hereto and made a part hereof as Exhibit A is an opinion rendered in a similar case by a deputy attorney general concerning the same subject matter. Also attached hereto and made a part hereof are certain statistics concerning registered voters, school populations, etc., of Rapides Parish.

It should be added here that there is another reason why the Court feels it should not approve the plan submitted by a majority of the members of Rapides Parish School Board as a permanent plan. This is so because it has not as of yet been recommended by members representing a majority of the people. There is a division on the Board and support for "Virginia Beach" is stronger than support for any other plan. But legally it cannot be accepted, because of the Supreme Court's opinion in *Fairley* (supra). In its opinion the majority stated:

"No. 25 involves a change from district to at-large voting for county su-

pervisors. The right to vote can be affected by a dilution of voting power as well as by an absolute prohibition on casting a ballot. See Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Voters who are members of a racial minority might well be in the majority in one district, but in a decided minority in the county as a whole. This type of change could therefore nullify their ability to elect the candidate of their choice just as would prohibiting some of them from voting."

The Rapides Parish statistics on this problem speak for themselves. They are attached.

■ The Court's conclusion is that the best course at this time is to institute a "weighted vote plan." It is true that this plan has less support with the Board than does "Virginia Beach", but it conforms to the requirements of law, and in particular to the "one man—one vote" principle. When the 1970 census is completed the School Board may then submit to the Court any proposal that it wishes in lieu of the weighted vote plan. It may again present the Virginia Beach Plan, provided it has met the requirements set forth by the Supreme Court in *Fairley.* The weighted vote plan, which is approved temporarily by the Court, is based on the 1960 census. It will be effective as of January 5, 1970. This is the same plan which is now in effect for the Rapides Parish Police Jury.

A formal judgment has this day been entered and signed, and is attached hereto.

## JUDGMENT

This matter is now before the Court for partial adjudication after granting plaintiffs' Motion for Summary Judgment and after response of the defendant Rapides Parish School Board to the Order of Court that a tentative plan be submitted to the Court for its consideration and determination. The Court has considered the entire record in these proceedings, the proposed plan submitted by the Board, plaintiffs' objections thereto and the proposed temporary "weighted vote" plan suggested by the plaintiffs. The Court finds that malapportionment has heretofore existed in the election and actions of the Rapides Parish School Board and that the proposed tentative plan for reapportionment, commonly known as the "Weighted Vote Plan", submitted by the plaintiffs is, for the present, acceptable to the Court and tends to conform to the requirements of law and, in particular, the "one man— one vote" principle. It is therefore

ordered, adjudged and decreed that the plan submitted by the Rapides Parish School Board heretofore filed in these proceedings is rejected at this time and that, effective as of the date of this Judgment, the School Board Members whose names hereinafter appear, representing the Wards indicated, shall be hereafter entitled to vote in proportion to the approximate percentage of the population which they represent on the School Board in conducting the business and affairs of the Rapides Parish School Board and that said "Weighted Vote Plan" (as hereinafter set forth) shall continue in effect subject to further orders of this Court and until a permanent Constitutionally permissible plan is submitted to and approved by the Court:

RAPIDES PARISH SCHOOL BOARD
"WEIGHTED VOTE PLAN"

| Board Member | Ward | Percentage of Population Represented | Weight of Vote |
|---|---|---|---|
| Lloyd M. Bell | 1 | 8 | 8 |
| William F. Cotton | 1 | 8 | 8 |
| Dr. John W. Deming | 1 | 8 | 8 |
| Gladys Higdon | 1 | 8 | 8 |
| William E. Skye | 1 | 8 | 8 |
| Morgan W. Walker | 1 | 8 | 8 |
| Clarence Calvin Stevens | 2 | 3 | 3 |
| Howard W. Jackson | 3 | 4 | 4 |
| Harold Eugene Elliott | 4 | 4 | 4 |
| Oscar L. Robinson | 5 | 2 | 2 |
| Henry Farley Cloud | 6 | 1 | 1 |
| Albert T. Hunter | 7 | 4 | 4 |
| Victor Arney Moreau | 8 | 7 | 7 |
| J. I. Barron, Jr. | 9 | 7 | 7 |
| David C. Bates | 9 | 7 | 7 |
| James Lee Robertson | 10 | 5 | 5 |
| Ray Stubblefield | 10 | 5 | 5 |
| Charles Slay, Jr. | 11 | 3 | 3 |

It is further ordered, adjudged and decreed that this Court shall retain jurisdiction of this action to dispose of all

other matters herein not concluded by this Judgment and for the purpose of considering any further plan to be submitted by the defendant, Rapides Parish School Board, for consideration by the Court following promulgation of the 1970 decennial census.

1960 CENSUS SHOWING POPULATION BY RACE IN VARIOUS WARDS OF RAPIDES PARISH
Registered Voters—November 6, 1969
Rapides Parish

| Ward | Negro | White |
|---|---|---|
| 1 | 22,139 | 30,985 |
| 2 | 1,092 | 2,483 |
| 3 | 2,750 | 1,892 |
| 4 | 1,135 | 3,379 |
| 5 | 60 | 1,818 |
| 6 | None | 1,646 |
| 7 | 1,595 | 2,667 |
| 8 | 1,015 | 6,298 |
| 9 | 3,073 | 13,219 |
| 10 | 780 | 9,662 |
| 11 | 130 | 3,685 |

STATE OF LOUISIANA

Department of Justice

Baton Rouge

September 12, 1969

Honorable W. A. Breedlove

Secretary

Police Juries Association of Louisiana

Post Office Box 755

Natchitoches, Louisiana

Dear Mr. Breedlove:

Enclosed for your information, please find a copy of a letter received from Jerris Leonard, an attorney in the Justice Department, Civil Rights Division.

Please forward a copy of this to each of the secretary-treasurers of the police juries of the parishes throughout the state.

Sincerely yours,

Jack P. F. Gremillion
Attorney General

September 10, 1969

Honorable Jack P. F. Gremillion

Attorney General of Louisiana

State Capitol Building

Baton Rouge, Louisiana 70804

Dear Mr. Attorney General:

This is in reply to your letter of July 1, 1969, in which you requested that we delineate our specific objections to the implementation of Acts 445 and 561 of the 1968 Regular Session of the Louisiana Legislature.

Our examination of this legislation discloses that Act 445 removes the previous requirement for the creation of a minimum number of police jury wards within a parish, thus permitting a police jury to redistrict a parish into one parish-wide ward. Therefore, we construe this Act as permitting a change from ward to at-large voting in police jury elections. Act 561 specifically provides for a change to at-large voting for school board members.

In the case of Fairley v. Patterson, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) involving a change from district to at-large voting for county supervisors in Mississippi, the Supreme Court held that such a change constitutes a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" within the meaning of Section 5 of the Voting Rights Act of 1965. In its opinion, the Court stated as follows:

> The right to vote can be affected by a dilution of voting power as well as by an absolute prohibition on casting a ballot. * * * Voters who are members of a racial minority might well be in the majority in one district, but in a decided minority in the county as a whole. This type of change could therefore nullify their ability to elect the candidate of their choice just as would prohibiting some of them from voting.

Based upon the 1960 Census, we found that of the 64 parishes in Louisiana, only 5 have Negro majority voting age populations. Of the 59 parishes having white majority voting age populations, 34 have a combined total of 109 wards where the Negro population is in the majority. Thus, it is apparent that a change from ward to at-large voting in these parishes would have the effect of diluting the actual or potential voting power of the Negro inhabitants.

An example of such dilution has taken place in East Carroll Parish. Our avail-

able statistics show that in that parish, the number of registered white voters exceeds the number of registered Negro voters. However, in several of the wards, including Wards 1 and 3, Negro voters out-number white voters. Prior to a recent reapportionment suit (Zimmer v. McKeithen, Civil Action No. 13927, W.D., La., December 2, 1968), all police jury and school board members were elected by the voters of their respective wards. According to our records, in 1966, a Negro candidate was elected to membership on the school board from ward 3. In 1967, two Negroes were elected to the police jury from wards 1 and 3.

On November 18, 1968, the East Carroll Parish Police Jury, in special session, adopted a resolution which provided that all new police jurors be elected at-large throughout the parish. This resolution was incorporated in the reapportionment order and extended thereby to include all new school board members. Since this decision, two Negro candidates for school board offices, one from ward 1 and the other from ward 3, have been defeated in at-large elections.

We further note that under the provisions of Act 561, any concentration of Negro voting power would be subject to dilution by the creation of special school board election districts, the boundaries of which need have no relation to existing or future ward boundaries.

Since neither of the Acts contain any safeguards against abuses, and in view of the opportunities afforded by the Acts to discriminate against Negro voters, we must reaffirm our objections to their implementation. However, we reiterate that should you wish to present justification for the changes or propose procedures which will insure against racially discriminatory effects in their implementation, the Attorney General will gladly reconsider his position.

Sincerely,

JERRIS LEONARD
Assistant Attorney General
Civil Rights Division

Registered Voters—November 6, 1969
Rapides Parish

| Ward | Number | Percentage |
|------|--------|-----------|
| Ward One | 21,419 | 47.54 |
| Ward Two | 1,271 | 2.82 |
| Ward Three | 1,592 | 3.53 |
| Ward Four | 2,429 | 5.39 |
| Ward Five | 1,484 | 3.29 |
| Ward Six | 682 | 1.51 |
| Ward Seven | 1,896 | 4.21 |
| Ward Eight | 1,968 | 4.37 |
| Ward Nine | 5,392 | 11.97 |
| Ward Ten | 4,668 | 10.36 |
| Ward Eleven | 2,257 | 5.01 |
| TOTAL | 45,058 | 100% |

RAPIDES PARISH SCHOOL BOARD
ALEXANDRIA, LOUISIANA

November 6, 1969

SCHOOL POPULATION BY WARDS

| Ward 1 | 15,223 Pupils | 48.2% of the parish total |
|------|------|------|
| Ward 2 | 822 Pupils | 2.6% of the parish total |
| Ward 3 | 1,270 Pupils | 4.0% of the parish total |
| Ward 4 | 1,325 Pupils | 4.2% of the parish total |
| Ward 5 | 809 Pupils | 2.6% of the parish total |
| Ward 6 | 378 Pupils | 1.2% of the parish total |
| Ward 7 | 1,114 Pupils | 3.5% of the parish total |
| Ward 8 | 2,796 Pupils | 8.8% of the parish total |
| Ward 9 | 3,240 Pupils | 10.3% of the parish total |
| Ward 10 | 3,147 Pupils | 10.0% of the parish total |
| Ward 11 | 1,443 Pupils | 4.6% of the parish total |

29,428 Total number of pupils in the public schools
2,139 Total number of pupils in the Parochial schools
31,567 Total number of pupils in the parish

Compiled by:
Edith Moseley
W. H. Parks
Travis E. Funderburk